UNITED STATES, Appellee,

v.

Ruston J. SMART, Private,
U.S. Army, Appellant.

No. 49275.
CM 443633.

U.S. Court of Military Appeals.

Oct. 28, 1985.

For Appellant: *Captain Robert W. Wiechering* (argued); *Colonel William G. Eckhardt Lieutenant Colonel William P. Heaston* and *Major Lawrence F. Klar* (on

brief); *Colonel Brooks B. LaGrua* and *Major John E. King*.

For Appellee: *First Lieutenant Joseph P. Falcone* (argued); *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Major Joseph A. Rehyansky,* and *Captain John J. Park, Jr.* (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

Pursuant to appellant's guilty pleas, a general court-martial sitting at Darmstadt, Federal Republic of Germany, found him guilty of two specifications of robbery, in violation of Article 122, Uniform Code of Military Justice, 10 U.S.C. § 922. The sentence adjudged was a bad-conduct discharge, confinement at hard labor for 5 years, total forfeitures, and reduction to the grade of private E-1. After the convening authority approved the findings and sentence, the Court of Military Review affirmed them.

This Court granted review on these issues:

I

WHETHER THE CONVENING AUTHORITY'S ACTION, DATED 29 DECEMBER 1982, WAS PREMATURE SINCE THE RECORD OF TRIAL AND ALLIED PAPERS CONTAIN NO INDICATION THAT TRIAL DEFENSE COUNSEL WAS SERVED WITH A COPY OF THE POST–TRIAL REVIEW OR GIVEN AN OPPORTUNITY TO RESPOND BEFORE ACTION WAS TAKEN.

II

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY DISALLOWING DEFENSE CHALLENGES FOR CAUSE AGAINST CAPTAIN HARRISON AND SERGEANT FIRST CLASS FAIR.

I

Appellant had been charged with committing two robberies by confronting sales clerks with what appeared to be a .45–caliber pistol. He elected to be tried by a court-martial composed of both officer and enlisted members. After his guilty pleas had been accepted and findings of guilty had been entered, the panel was sworn and questioned upon *voir dire*. In response to a question by defense counsel, two members—Captain Sammie Harrison and Sergeant First Class Billy Fair—stated that they had been victims of robbery.

Replying to followup questions, Captain Harrison stated that, while he was in college, his room had been "broken into and ... $200.00 stolen." On a later occasion, his house had been "broken into" and his coin collection, as well as those of his sister and his mother, had been stolen. However, Harrison acknowledged that these crimes of which he had been a victim were burglary—rather than face-to-face robbery like that with which Smart was charged.

When questioned whether these two incidents "would influence ... [his] decision on a sentence in this case," he responded: "I can't say. I think it would, but I don't know to what degree it might do it." Harrison denied that he would "be comparing those incidents with the circumstances" of the offenses alleged against Smart; but when asked if he could "fairly sit in this case, and just use ... [his] common sense and the circumstances and facts that are presented here, to determine the case," he answered:

It's hard to say. I wouldn't say I positively could, because I'd have to hear the circumstances of the case, and they might trigger something from the past, and again it may- not.

Trial counsel attempted to rehabilitate this member; but when he inquired whether Harrison would be able to disregard what had happened in the past, the answer was:

To say that I could, no, I can't say that I could, due to the fact that after listening to those circumstances, then it might trigger something from the past. Am I making myself clear?

The colloquy then proceeded as follows:

TC: Well, the case today deals with two robberies. Do you think that under, that

under the circumstances of two robberies, you could disregard any outside influences, and base your judgment solely on the facts presented here today, to render a fair sentence?

MEMBER (CPT HARRISON): *Totally disregard, I'd say, no.*

TC: Well, do you think that you could still render a fair and just sentence—

MEMBER (CPT HARRISON): Yes, I think I could.

TC:—taking into consideration, your common sense?

MEMBER (CPT HARRISON): Right, I do.

\*　\*　\*　\*　\*　\*

MJ: Captain Harrison, will you be able to consider the entire range of punishments available to the court, all the way from no punishment at all, to the maximum punishment?

MEMBER (CPT HARRISON): *No punishment, no, sir, I will not consider that one.*

(Emphasis added.) The interrogation of this member was pursued no further.

Questioned individually on *voir dire* about his experiences as a crime victim, Sergeant First Class Fair explained:

I grew up in the city of Chicago, and I have been robbed quite a few times. First of all, I was robbed by an adult, and as a teenager doing odd jobs, I was robbed by local gangs.

Asked how many times he had been robbed, Fair answered, "I guess I've been accosted about six or seven times." These were situations "where somebody's taking money off of your person direct." When the defense counsel asked if, in light of this evidence, Fair thought he would "be able to fairly sit in this case and hear the evidence," the reply was, "Well, I have no problem with my past experiences, just was just something that has happened to me in my life." According to Fair, he "would consider what is happening now, not yesterday"; and he did not believe that he would be influenced by the circumstance

that he had been robbed so often. He stated that he would "be able to consider the full range of punishments" upon "hearing the facts of the case." Although Fair had been robbed with a knife and his father had been robbed with a gun, he insisted that he "would have no problem then in rendering a fair and just sentence in this case."

After the *voir dire* of the members, the military judge denied defense challenges for cause entered as to Harrison and Fair. Thereafter, the defense counsel exercised his sole peremptory challenge against another member.

After trial, a review was prepared by the staff judge advocate. However, the record of trial does not reveal whether Smart's defense counsel was ever served with a copy of this review. The Court of Military Review concluded that service of the post-trial review had not taken place; but the court then went on to find waiver by defense counsel, because he had not complained earlier about the failure of the staff judge advocate to comply with the requirements of *United States v. Goode*, 1 M.J. 3 (C.M.A.1975).

II

In *Goode* this Court required service of the staff judge advocate's review on defense counsel. A similar requirement is now embodied in RCM 1106(f)(1), Manual for Courts-Martial, United States, 1984. By means of the *Goode* response, error is avoided because defense counsel must promptly raise any matters as to which he believes the review is deficient; and a failure to raise an issue in a *Goode* response typically results in waiver.

In *United States v. Kincheloe*, 14 M.J. 40 (C.M.A.1982), the defense counsel had been served belatedly with a copy of the post-trial review. Under the circumstances of that case, we concluded that the defense counsel's failure to complain had constituted a waiver of appellant's right to be served with the post-trial review. In the present case, no post-trial review was ever served on the defense counsel. On the basis of this distinction, the defense seeks

18

to avoid the waiver result of *Kincheloe*. Appellant contends that the duty of his counsel to respond to the staff judge advocate's review could only be triggered by service of the review on those counsel. Thus, at any time during appellate review defects in the review could be asserted.

■ We disagree with this position. Whether the review is not served on the defense counsel until after action by the convening authority, or whether the review is never served and the defense counsel learns of its existence and contents in some indirect way, the proper procedure is for defense counsel promptly to identify defects in the review and then request that the Court of Military Review remand to the convening authority for further review. If, as here, defense counsel fails to specify defects in the review, then he has waived the accused's right to respond to the post-trial review. If he specifies defects in the review which are relatively minor and involve only questions of law, then the Court of Military Review may rule on the merits of defense contentions without a remand to the convening authority. Otherwise, the convening authority should be given an opportunity to consider the questions raised by defense counsel.

With respect to the present case, we agree fully with these comments of the Court of Military Review:

Instead of promptly complaining that he had not received a copy of the review, the defense counsel did nothing. If a defense counsel chooses to sit idle, he does so at his peril. *United States v. Kincheloe*, 14 M.J. 40, 43 (CMA 1982). We also note that appellant's trial defense counsel nowhere states that he would respond to the review if allowed time to do so. There is no suggestion of any particular deficiency in the review or prejudice suffered by appellant.

The purpose of service is to provide appellant the opportunity to explain or rebut any adverse matters contained within the post-trial review. However, the service requirement is not an invitation for counsel to do nothing. Under these circumstances, the lengthy delay waives any objection to the defect in service of the review.

Unpublished opinion on reconsideration at 2.

### III

#### A

■ For many decades, military law has recognized the right of an accused to challenge individual members of a court-martial. S. Benet, *A Treatise on Military Law and the Practice of Courts-Martial* 79–88 (6th ed. 1868). Three decades ago Judge Latimer observed that, in determining a challenge for cause, the issue is "whether . . . [the panel member] is mentally free to render an impartial finding and sentence based on the law and the evidence." *United States v. Parker*, 6 U.S.C.M.A. 274, 284–85, 19 C.M.R. 400, 410–11 (1955). Thus, in the military justice system "an accused is still entitled to have his guilt or innocence determined by a jury composed of individuals with a fair and open mind." *United States v. Deain*, 5 U.S.C.M.A. 44, 49, 17 C.M.R. 44, 49 (1954). Consistent with this premise, the Manual for Courts-Martial, United States, 1969 (Revised edition), which was in effect at the time of appellant's trial, not only enumerated 12 specific grounds on which a challenge for cause might be based, but also provided as a catchall that a challenge might be sustained on the basis of:

Any other facts indicating that he should not sit as a member or military judge in the interest of having the trial and subsequent proceedings free from substantial doubt as to legality, fairness, and impartiality.

Para. 62*f*(13). The 1984 Manual contains similar language in RCM 912(f)(1)(N).

The 1969 Manual also specifically directed that a "military judge . . . should be liberal in passing on challenges." Para. 62*h*(2).[1] Nonetheless, our precedents have allowed

1. While RCM 912(f)(3) of the Manual for   Courts-Martial, United States, 1984, does not

military judges broad latitude in ruling on challenges for cause. *See United States v. McQueen*, 7 M.J. 281 (C.M.A. 1979). As one appellate court has observed:

> There are few aspects of a jury trial where we would be less inclined to disturb a trial judge's exercise of discretion, absent clear abuse, than in ruling on challenges for cause in the empanelling of a jury.

*United States v. Ploof*, 464 F.2d 116, 118–19 n. 4 (2d Cir.), *cert. denied*, 409 U.S. 952, 93 S.Ct. 298, 34 L.Ed.2d 224 (1972).

■ Despite our respect for the conscientiousness of military judges in ruling on challenges, this Court cannot abdicate its responsibility to assure that military accused are tried by court members who are unbiased as to findings and sentence. Our responsibility is especially great—perhaps greater than that of other appellate courts—because in courts-martial peremptory challenges are much more limited than in most civilian courts and because the manner of appointment of court-martial members presents perils that are not encountered elsewhere. Therefore, we do not accept as conclusive a challenged member's perfunctory disclaimer of personal interest or his assertion of impartiality. *See United States v. Harris*, 13 M.J. 288 (C.M.A. 1982). Moreover, we have recognized that under some circumstances bias may be implied—although the concept of implied bias

is not to be applied indiscriminately. *See United States v. Harris, supra* at 292; *United States v. Porter*, 17 M.J. 377, 380 (C.M.A.1984).[2]

### B

■ Despite the broad discretion available to the military judge, we conclude that here he erred by denying the defense challenges for cause. Admittedly the burglaries of which Captain Harrison had been a victim did not of themselves disqualify him to participate in trying appellant. The problem lies with Harrison's answers to questions about whether he could disregard his past experiences as a victim. Instead of asserting his lack of bias "in a confident or unequivocal manner," *see United States v. Harris*, 13 M.J. at 291, Harrison stated that he did *not* believe that he could disregard any outside influence and base the sentence solely on the facts presented in court.

The military judge did not explore the implications of these answers in seeking to determine Captain Harrison's fitness to serve. Instead, he only asked Harrison whether he would "be able to consider the entire range of punishments available to the court, all the way from no punishment at all to the maximum punishment"; and he received the rather discomforting answer, "No punishment, no, sir, I will not consider that one."[3] Thus, instead of reha-

contain this express language, the analysis of the Rule states that the deletion was "not intended to change the policy expressed in that statement." Page A21–54.

**2.** In *Porter* we ruled that a court member was not precluded from sitting in a robbery case, even though he had been the victim of larceny from his own suitcase the day before the trial began. In this connection we relied on the Supreme Court's observations:

> Due process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as *voir dire* and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means

> a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

*United States v. Porter*, 17 M.J. 377, 379, quoting *Smith v. Philips*, 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982).

**3.** Because of its "potential adverse collateral consequences," a finding of guilty may be said to inflict punishment irrespective of the sentence adjudged. For example, it carries social stigma, "may be used to impeach ... credibility," "may delay ... eligibility for parole, or [may] result in an increased sentence under a recidivist statute for a future offense." *Cf. Ball v. United States*, —— U.S. ——, ——, 105 S.Ct. 1668, 1674, 84 L.Ed.2d 740, 748 (1985).

bilitating the member, the judge elicited an answer which emphasized Captain Harrison's inflexibility as to sentence and unwillingness to "consider" the full range of punishments available. Perhaps if the judge had inquired further, he might have obtained answers demonstrating that Captain Harrison could be fair and impartial. However, he failed to do so; and we must decide this issue on the basis of the record before this Court.

▪ We are aware that the liberal *voir dire* of court members which often occurs may lure a member into replies which are not fully representative of his frame of mind. *See United States v. Tippit*, 9 M.J. 106 (C.M.A.1980). Therefore, when there is ambiguity in the answers of a member, we should give great weight to the evaluation of those answers by the military judge who observed the member's demeanor during *voir dire*. Nevertheless, the *voir dire* of Captain Harrison did not provide a basis for finding that he was unbiased; and so the denial of the challenge was error.

In light of Harrison's earlier responses to the questions by defense counsel, the military judge either should have excused him or should have assured that the record contained answers which adequately rehabilitated him. Moreover, it might have been helpful if the judge had explained his rationale for denying this challenge for cause.

Unlike Captain Harrison, Sergeant First Class Fair disclaimed bias "in a clear and unequivocal manner"; and we shall assume that he appeared forthright to the military judge. Moreover, we realize that victims of robbery are not automatically excluded from sitting as jurors in robbery trials. *Cf. Williams v. State*, 275 Ind. 434, 417 N.E.2d 328 (1981); *Johnson v. State*, 356 So.2d 769 (Ala.Cr.App.1978); *Commonweath v. Westerfer*, 308 Pa.Super. 474, 454 A.2d 633 (1982). Indeed, the crime has become commonplace enough that in some localities to exclude all its victims might substantially reduce the pool of jurors available to try robbery cases.

Nonetheless, we conclude that the challenge for cause against Fair should have been sustained "in the interest of having the trial and subsequent proceedings free from substantial doubt as to legality, fairness, and impartiality." *See* para. 62*f*(13), 1969 Manual, *supra*. Armed robbery is a traumatic event, which usually has great impact on the victim. Fair had been subjected to this trauma at knife-point on six or seven occasions. Furthermore, his father had been robbed with a pistol. We do not doubt Sergeant Fair's sincerity when he asserted that, despite his experience, his mind was open; but we disagree that this assertion sufficed to permit his inclusion on the panel. *Cf. Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). Prejudice must be suspected when most people in the same position would be prejudiced. *Taylor v. United States*, 386 F.Supp. 132, 139–40 (E.D.Pa.1974), *aff'd* 521 F.2d 1399 (3d Cir.1975).

Under these circumstances the risk is too great that—even with the best intentions—Sergeant Fair could not remove from his mind the recollections of his own experiences as a victim. Therefore, in the interest of both fairness and the appearance of fairness he should not have been allowed to participate in sentencing appellant.

Increasingly—and properly—legislatures and courts have been granting rights to victims. However, we do not believe that one of these rights is to have on a jury or court-martial panel a member who has been a victim of the same type of crime for which an accused is being tried. Instead, just as heretofore, jurors and court-martial members must be persons whose impartiality is not reasonably open to question.

### C

▪ Some military judges seem hesitant to uphold challenges for cause in situations where they should do so "in the interest of having the trial and subsequent proceed-

ings free from substantial doubt as to legality, fairness and impartiality." This hesitancy is understandable, because granting the challenge may be inconvenient for the judge, the court members, the convening authority, and others. For example, in the present case, if Sergeant Fair had been excused, the enlisted representation on the court apparently would have been reduced below the requisite one-third, and it would have been necessary to halt proceedings until a new enlisted member was added. Inconvenience, however, is not an adequate ground to deny a challenge for cause. The proper course of action is to give heed to the mandate for liberality in passing on challenges and to consider alternatives which will avoid the occasions for challenge and reduce the inconvenience when challenges must be sustained. *See United States v. Mason*, 16 M.J. 455, 458–59 (C.M.A.1983) (Everett, C.J., dissenting).

4. In view of appellant's pleas of guilty, the findings here were unaffected by the judge's error in

## IV

The decision of the United States Army Court of Military Review is reversed as to sentence, and the sentence is set aside.[4] The record of trial is returned to the Judge Advocate General of the Army. A rehearing on sentence may be ordered.

COX, Judge (concurring):

While I concur in the principal opinion, I do not intend to create any rule of law known as "implied bias" where a prospective court member has been the victim of a crime similar to the one charged. I would test court-member qualifications on a case-by-case basis and would, almost always, defer to the discretion of the military judge. *See Wainwright v. Witt*, —— U.S. ——, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). Here, I agree with Chief Judge Everett that this military judge abused his discretion.

denying the challenges for cause. *Cf. United States v. Heriot*, 21 M.J. 11 (C.M.A.1985).