UNITED STATES

v.

**Airman Steven HAWKINS, FR587–21–1150, United States Air Force.**

**ACM 29383.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 4 March 1991.

Decided 14 June 1993.

Appellate Counsel for the Appellant: Colonel Jeffrey R. Owens and Major Mary C. Yastishock.

Appellate Counsel for the United States: Lieutenant Colonel Brenda J. Hollis, Major Paul H. Blackwell, Jr., and Captain Carlos L. McDade.

Before LEONARD, JAMES and JOHNSON, Appellate Military Judges.

## OPINION OF THE COURT

JOHNSON, Judge:

Based on his plea of guilty, Airman Hawkins was convicted of disobeying a lawful order restricting him to McChord Air Force Base, Washington. The members of his court-martial also found him guilty of fraudulent enlistment, damaging two military vehicles by bombing them, reckless driving, stealing a motorcycle, stealing $2,900.94 from his insurance company, setting fire to a government building, concealing a stolen automobile, and false swearing.[1] He argues a number of issues before us, one of which warrants modification of the findings as to one specification, and modification of the sentence.

## THEFT OF MOTORCYCLE

Late one evening members of a security police patrol saw a motorcycle being operated on the installation at high speed. A chase ensued, but the motorcyclist escaped. Shortly thereafter a motorcycle similar in appearance to the one involved in the chase was found parked on the installation. Its engine was still hot. The motorcycle was impounded as evidence in the investigation of various traffic offenses, and it was soon identified as belonging to Airman Hawkins. About a week later, Airman Hawkins demanded his motorcycle be returned to him. When this demand was refused, Airman Hawkins took it without authority. He was convicted of larceny on the basis of this taking, and he now argues before us the evidence is insufficient to support this finding of guilty.

Airman Hawkins argues he cannot be convicted of stealing his own motorcycle from the security police. He has no quarrel with the instructions of the military judge that one of the elements of larceny that must be proven beyond a reasonable doubt was that the accused wrongfully took the motorcycle from the possession of the security police, and that it "belonged" to the security police. The military judge defined "possession" and "owner" as follows:

> The term "possession" means care, custody, management, or control. The term "owner" refers to the person who, at the time of the taking ... had a greater right to possess the property than the accused did, in light of all the conflicting interests. Property belongs to a person who has a greater right to possession of the property than the accused, or possession of the property....

> Now, with respect to [the motorcycle], a taking is wrongful only if it's done without the consent of the owner and with a criminal state of mind. In determining whether the taking was wrongful you should consider all the facts and circumstances which have been presented by the evidence.

No objection was raised at trial to this instruction, which is taken verbatim from the relevant portion of the model instruction on the elements of larceny in paragraph 3–90 of Department of the Army Pamphlet 27–9, *Military Judges Benchbook*, Change 3, 15 February 1989. Airman Hawkins now argues before us that in the facts of this case the security police had no superior right to possession of the motorcycle. Therefore, he argues, the evidence is not factually or legally sufficient to support his conviction of stealing the motorcycle.

Under Article 66(c), UCMJ, 10 U.S.C. § 866(c), a court of military review has the duty to determine not only the legal sufficiency of the evidence but also its factual sufficiency. The test for the former is whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt. For factual sufficiency, the test is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the judges of the court of military review are themselves

---

1. Articles 83, 90, 108, 111, 121, 126, 134, UCMJ; MCM, Part IV, paragraphs 7, 14, 32, 35, 46, 52, 79, 106 (1984).

convinced of the accused's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

■ There is no question that law enforcement officials have the authority to impound personal property as evidence of crime and to retain it until final disposition of the case, especially when the property concerned was the instrumentality by which the offense was committed. *See* Air Force Regulation 125–3, *Security Police Policies and Procedures,* para 81 (Mar 1991); Air Force Regulation 125–21, *Security Police Investigations,* paras 13–16 (Change 7, Mar 1990). Airman Hawkins does not contest this authority. Instead, he argues the security police did not establish at trial that they needed to retain the motorcycle for specific investigative tests or procedures, and they did not promptly move the motorcycle to their vehicle impound lot, but instead left it parked for over a week under a roof overhang in front of the security police office. Airman Hawkins speculates the motive of security police in retaining his motorcycle was to "spite him" because he would not admit he operated it on base on the night in question.

■ We are not inclined to create a rule that law enforcement officials must deliver evidence back to the person holding its legal title as soon as they have finished conducting all intended investigatory tests or procedures on it. As the investigation proceeds, the property may prove to be useful in ways that were previously unanticipated. In any event, it may be necessary to present the property as evidence before a court or other forum.

We are also not inclined to speculate as to why the security police delayed moving the motorcycle to their impound lot, although the record does indicate that a security police investigator invited Airman Hawkins to bring in a cover for the motorcycle before it was moved from the covered area to the open impound lot. There is no evidence whatever of any misconduct or spiteful motive that might raise due process issues that arguably could operate to vitiate the authority of the security police to retain custody of Airman Hawkins' motorcycle.

■ It remains to be considered whether the right of the security police to custody of Airman Hawkins' motorcycle was a property right superior to his, violation of which subjects a wrongful taker to conviction for larceny. We conclude it was. The unquestioned right of law enforcement authorities to seize personal property based on probable cause to believe it is the instrumentality by which a crime was committed, and to retain possession of that property until the case is disposed of, is a limited property right similar to that of a lienholder or a lessee.[2] The security police acted within their authority and in a reasonable manner in this case, and their right of possession of the motorcycle was superior to that of Airman Hawkins. We therefore conclude that the evidence of record is legally and factually sufficient to support Airman Hawkins's conviction of larceny of his own motorcycle from the custody of the security police.

■ The value of the government's possessory interest is not, however, the full value of the property, as the military judge and counsel apparently assumed in calculating the maximum sentence in this case. *See* MCM, Part IV, paragraph 46d(1)(g)(iv) (1984). There being no apparent way to calculate the value of the government's interest, we find only that it was of "some value". The finding of guilty as to specification 1 of Charge V is therefore modified by excepting the words "of a value of about $2,900," substituting therefore the words "of some value."

## APPROPRIATENESS OF SENTENCE

Airman Hawkins argues his sentence is inappropriately severe. He calls attention

**2.** *See Warden, Maryland Penitentiary v. Hayden,* 387 U.S. 294, 303, 87 S.Ct. 1642, 1648, 18 L.Ed.2d 782, 790 (1967) (the government has a limited property right consisting of a superior right of possession of the instrumentalities of crime); *Gouled v. United States,* 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921).

to his youth and commendable duty performance, but he relies primarily on the argument that his sentence was disproportional to that of his three civilian co-actors in bombing two automobiles and setting fire to a building, all used by the Air Force Office of Special Investigations (OSI). Airman Hawkins' co-actors testified against him in exchange for a cap of 5 years on their sentences to confinement in a Washington state penitentiary, while Airman Hawkins' sentence included 15 years of confinement.

■ This Court has previously expressed its concern about highly disparate sentences in closely related cases. In *United States v. Kent,* 9 M.J. 836 (A.F.C.M.R. 1980), we indicated disparate sentences would be examined closely when (1) there is a direct correlation between each of the accused and their respective offenses, (2) the sentences are highly disparate, and (3) there are no good and cogent reasons for the difference in punishment. *Id.* at 838–39.

■ This is a narrow exception to the general rule that the appropriateness of an accused's sentence is to be determined without reference or comparison to sentences in other cases. *United States v. Olinger,* 12 M.J. 458, 460 (C.M.A.1982). The appropriateness of an accused's sentence must be judged on an individual basis, considering the nature and seriousness of the offense and the character of the offender. *United States v. Snelling,* 14 M.J. 267, 268 (C.M.A.1982). Furthermore, there is no burden on the government to identify and justify differences between the sentences of co-actors. *Olinger,* 12 M.J. at 461 (Cook, J., concurring in the result). The most that can be said is that convening authorities and the courts of military review may elect to consider sentences in related cases in determining sentencing appropriateness. The weight to be given any sentence comparison is a matter for their discretion. *United States v. Ballard,* 20 M.J. 282 (C.M.A.1985); *United States v. Thorn,* 36 M.J. 955 (A.F.C.M.R. 1993).

■ Applying these principles to the case at hand, we find that sentence comparison deserves very little weight. Airman Hawkins' three co-actors in bombing the OSI vehicles and setting fire to the OSI building were apparently charged only with those offenses, while Airman Hawkins was also found guilty of a number of other offenses. Each of Airman Hawkins's three civilian co-actors testified against him in his court-martial. Airman Hawkins provided no such assistance to law enforcement or prosecution officials. Looking to the facts of the incident itself, the evidence of record indicates that Airman Hawkins first proposed the plan to damage the OSI vehicles and building as retaliation for OSI involvement in breaking up a car theft and burglary ring, and that he participated fully in it. Finally, sentence comparisons among cases disposed of in civilian courts and those tried by courts-martial are even less persuasive than comparisons among court-martial sentences, given the differing approaches in the civilian and military systems to sentencing principles and the administration of punishment.

It remains to reassess Airman Hawkins' sentence because of the error in the trial court's calculation of the value of the government's interest in the stolen motorcycle, as discussed above. Our task is to determine what sentence the trial court probably would have imposed if the error had not occurred. *United States v. Peoples,* 29 M.J. 426 (C.M.A.1990); *United States v. Crowe,* 30 M.J. 1144 (A.F.C.M.R.1990), *pet denied,* 32 M.J. 43 (C.M.A.1990). In the circumstances of this case we are confident we can do so.

The maximum punishment for larceny of an item of "some value" is the punishment prescribed for larceny of items of a value of $100 or less. This includes 6 months of confinement, rather than the 5 years of confinement authorized as part of the maximum punishment for larceny of property worth more than $100. The aggregate maximum sentence to confinement for Airman Hawkins' offenses is therefore reduced from 33 years and 6 months, as announced at trial, to 29 years.

■ Airman Hawkins was convicted of nine offenses under seven UCMJ articles. The motorcycle larceny was not the most serious of these offenses. The error in this case was only in identifying the maximum authorized punishment for this offense; the finding of guilt was not set aside. The punishment imposed included less than half the maximum authorized confinement as announced at trial. In these circumstances we are confident that the members, if they had been properly informed of the maximum authorized punishment, would still have sentenced Airman Hawkins to a bad-conduct discharge, total forfeitures, and reduction to E–1. We conclude they might have sentenced Airman Hawkins to somewhat less confinement than the 15 years they originally imposed, but not less than 12 years. We therefore approve only so much of Airman Hawkins' sentence as provides for a bad-conduct discharge, confinement for 12 years, forfeiture of all pay and allowances, and reduction to E–1.

We have examined the entire record, the convictions, and the sentence, giving due consideration to the characteristics of this offender and to the crimes of which he was convicted. We are satisfied the sentence, as modified, is not inappropriate. *United States v. Healy*, 26 M.J. 394 (C.M.A.1988); *United States v. Snelling*, 14 M.J. 267 (C.M.A.1982).

### *GROSTEFON* SUBMISSIONS

We have also carefully reviewed the seven assertions of error submitted personally by Airman Hawkins and properly summarized by appellate defense counsel. *See United States v. Quigley*, 35 M.J. 345 (C.M.A.1992); *United States v. Gunter*, 34 M.J. 181 (C.M.A.1992); *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982). We find that none warrant relief.

■ The evidence is legally and factually sufficient to support the finding that Airman Hawkins was guilty of fraudulent enlistment. The clear and positive testimony of his recruiters and the documentary evidence of his traffic violations strongly support an inference that he willfully concealed some of those offenses, the cumulative number of which would have disqualified him from enlistment.

■ The evidence is legally and factually sufficient to support the finding that Airman Hawkins was guilty of larceny of $2,900.94 in currency from his insurance company by falsely reporting that his motorcycle had been stolen by persons unknown. Payment of the insurance proceeds to a lending institution holding a lien on the motorcycle to secure a note on which Airman Hawkins was the obligor, which payment was made at Airman Hawkins's direction in lieu of issuance of a check payable to Airman Hawkins and the lending institution, was fairly charged as a larceny of "currency." *See United States v. Seivers*, 8 M.J. 63 (C.M.A.1979).

■ Airman Hawkins waived any objection to any misstatement of the testimony made by trial counsel in his argument on findings by failing to make an objection at trial. *United States v. Doctor*, 7 U.S.C.M.A. 126, 21 C.M.R. 252 (1956); *United States v. Lips*, 22 M.J. 679, 683 (A.F.C.M.R.1986) *pet. withdrawn*, 22 M.J. 366 (1986); *United States v. McPhaul*, 22 M.J. 808, 814 (A.C.M.R.1986); R.C.M. 919(c).

■ Airman Hawkins was not denied his right to counsel of his choice during the sentencing portion of his trial. After Airman Hawkins announced his dissatisfaction with his counsel's tactics, the military judge properly conducted a colloquy with Airman Hawkins on the subject. The advice the military judge gave Airman Hawkins concerning his options as to requesting new military counsel, retaining civilian defense counsel, or representing himself was accurate and noncoercive. *See United States v. Mix*, 35 M.J. 283 (C.M.A.1992). We conclude Airman Hawkins's choice to continue his representation by his detailed military counsel and his individual military counsel was voluntary and understanding. R.C.M. 506.

■ Airman Hawkins was not denied the right to a fair trial under the sixth amendment because some of the members were assigned to the same wing as was the

Airman Hawkins. A wing is a sufficiently large organization that no presumption of prior knowledge, prejudice, or other disqualifying factor arises. Article 25(c), UCMJ, prohibits members of an accused's unit from serving as members of a court-martial, but it only applies to enlisted members and its definition of "unit" is no larger than a squadron. Further, Airman Hawkins' failure to make a motion at trial challenging the selection of the members and his failure to challenge any member on this basis waive the issue on appellate review. *United States v. Wilson,* 21 M.J. 193 (C.M.A.1986).

 The exposure of three of the members to Airman Hawkins during chemical warfare classes in which he was an assistant instructor did not disqualify them, since there is no indication that they formed any unfavorable opinion of Airman Hawkins from that experience, or even remembered it. Further, Airman Hawkins's failure at trial to challenge any member on this basis waives the issue on appellate review. R.C.M. 912(b)(3).

Finally, Airman Hawkins complains his defense counsel was ineffective in not conducting a sufficient investigation and not calling certain witnesses. In an affidavit responding to these complaints, Airman Hawkins' lead defense counsel avers that he or his co-counsel attempted to follow up all leads to witnesses appearing in the reports of investigation and those provided by the accused. Some of these witnesses told contradictory stories. Others were unbelievable, or did not exist. The affidavit of defense counsel is clear and convincing, and it is corroborated by the vigorous representation provided to Airman Hawkins in this 12-day trial whose transcript covers 1,121 pages and fills a 12-volume record of trial. We note defense counsel succeeded in obtaining acquittals for Airman Hawkins on four specifications. We find no error or omission made by defense counsel that would call into question the effectiveness of their representation of Airman Hawkins. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Scott,* 24 M.J. 186 (C.M.A.1987).

We have examined the findings, as modified, and we find them legally and factually correct. The sentence, as modified, is not inappropriate.

Accordingly, the findings of guilty, as modified, and the sentence, as modified, are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

Senior Judge LEONARD and Judge JAMES concur.