UNITED STATES

v.

**Senior Airman LOUIS I. TRAVELS,
FR272–72–0746, United States
Air Force.**

**ACM 31437 (f rev).**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 19 March 1994.

Decided 22 Oct. 1997.

Appellate Counsel for Appellant: Colonel David W. Madsen, Lieutenant Colonel Kim L. Sheffield, and Captain W. Craig Mullen.

Appellate Counsel for the United States: Lieutenant Colonel Michael J. Breslin and Captain Libby A. Brown.

Before ROTHENBURG, SCHREIER, and SPISAK, Appellate Military Judges.

## OPINION OF THE COURT UPON FURTHER REVIEW

SPISAK, Judge:

Contrary to his pleas, members convicted the appellant of housebreaking, burglary, assault, rape, obstruction of justice, and attempted subornation of perjury. The court then sentenced him to a dishonorable discharge, confinement for 10 years, total forfeitures, and reduction to the lowest enlisted grade (E–1). Finding adversely to the appellant on each of five assigned errors, we affirmed both the findings and sentence on 14 June 1996. The United States Court of Appeals for the Armed Forces (USCAAF) returned the case to us for reconsideration of the following assigned error:

> WHETHER THE APPELLANT WAS DEPRIVED OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BY COUNSEL'S FAILURE TO CHALLENGE CERTAIN COURT MEMBERS WHOSE RESPONSES DURING VOIR DIRE CONCERNING THEIR RESPECTIVE PERSONAL AND PROFESSIONAL EXPERIENCES PLACED THE FAIRNESS AND IMPARTIALITY OF THE COURT-MARTIAL PROCEEDING INTO QUESTION.

We have carefully reconsidered this issue and again, finding no prejudicial error, we affirm.

■ Our senior court recently said that "[a]s a general rule, defense counsel may not decline to inquire into potentially prejudicial information and then claim on appeal that the information was prejudicial." *United States v. Lavender*, 46 M.J. 485, 488 (1997). Here, appellate defense counsel would have us find that having so inquired, counsel may not decline to make challenges warranted by that inquiry. We decline to so find for two reasons. First, we find that the converse of the general rule is true. Counsel who inquires into potentially prejudicial information, may not decline to make a challenge then raise the issue on appeal. Second, ap-

pellate counsel's argument is contrary to the rule that decisions on "what court members to challenge, ... and all other strategic and tactical decisions are the exclusive province of the defense counsel after consultation with the client." Air Force Standards for the Administration of Criminal Justice, Standard 4–5.2(b) (1 July 1994).

Moreover, it is well settled that absent a clear showing of specific prejudice, failure to make a challenge at trial waives that ground on appeal. *United States v. Wilson*, 21 M.J. 193, 197 (C.M.A.1986). *See also United States v. Bannwarth*, 36 M.J. 265, 268 (C.M.A.1993) (waiver found for failure to challenge member because of friendship with accuser); *United States v. Hawkins*, 37 M.J. 718, 724 (A.F.C.M.R.1993) (failure to make motion at trial challenging selection of members and failure to challenge any member constituted waiver), *pet. denied*, 39 M.J. 442 (C.M.A.1994). Allowing appellate defense counsel to label a decision not to challenge court members as "ineffective assistance of counsel," would both defeat the longstanding waiver rule for challenges and prevent trial defense counsel from making unorthodox, but perhaps effective, tactical decisions related to court membership. We find that when, as here, detailed *voir dire* is conducted by the defense counsel, counsel's subsequent failure to challenge a member is a tactical decision which waives any ground for challenge revealed by the *voir dire*.

While we ordinarily will not second-guess the strategic or tactical decisions made at trial by defense counsel, by remanding this case to us on an "ineffectiveness of counsel" issue, USCAAF has asked us to do just that. *United States v. Sanders*, 37 M.J. 116, 118 (C.M.A.), *cert. denied*, 510 U.S. 1010, 114 S.Ct. 600, 126 L.Ed.2d 565 (1993). *See also United States v. Morgan*, 37 M.J. 407, 410 (C.M.A.1993); *United States v. Simoy*, 46 M.J. 592 (A.F.Ct.Crim.App.1996); *United States v. Washington*, 42 M.J. 547 (A.F.Ct. Crim.App.1995), *aff'd*, 46 M.J. 477 (1997). We assume from its remand that the Court is concerned that "where inaction occurs at a critical point where action is compelled by the situation—where, in other words, defense counsel remains silent where there is no

realistic strategic or tactical decision to *make* but to speak up," then we should act to correct the wrong. *United States v. Rivas*, 3 M.J. 282, 289 (C.M.A.1977) (emphasis in original). We will, therefore, review counsel's "inaction" here to determine whether or not it constituted ineffective assistance of counsel or was based on a "realistic strategic or tactical decision."

The Supreme Court has set forth a two-pronged test to assist appellate courts in determining questions of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This test was adopted by the US-CAAF in *United States v. Ingham*, 42 M.J. 218 (1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 745, 133 L.Ed.2d 693 (1996). *Strickland's* two-prong test requires the appellant to first show that counsel's performance was so deficient, the errors so serious that the counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Next the appellant must show prejudice to his ability to receive a fair trial, the result of which was reliable. *Lockhart v. Fretwell*, 506 U.S. 364, 369–70, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993) (quoted in *United States v. Christy*, 46 M.J. 47, 50 (1997), *cert. denied*, —— U.S. ——, 117 S.Ct. 2484, 138 L.Ed.2d 992 (1997)).

The court convicted the appellant of breaking into the dormitory rooms of two women, raping one woman and assaulting another on two different nights in 1993, and of obstructing justice and attempting to suborn perjury by trying to get a witness either to lie to investigators or refuse to talk to them. At trial, the appellant asserted a defense of diminished capacity and attempted to show that he would not have committed the rape had he been in complete control of his behavior. He denied even being in the room of the assault victim or trying to get a witness to lie for him. The defense introduced medical testimony that the appellant suffered from severe migraine headaches for which three different medications had been prescribed. Evidence from his psychiatrist and his medical records also indicated that the appellant frequently abused alcohol.

The appellant testified in his own behalf, telling the members a sad tale of physical and sexual abuse, neglect and hardship. Notwithstanding his testimony, the members convicted him of all charged offenses with the exception of the words "in the nighttime" in one specification of burglary.

During *voir dire,* five court members indicated that they or their family members were victims of violent crimes. Trial counsel, civilian defense counsel, and the military judge questioned all five members about their own and their family members' personal experiences with these crimes. Each of the members answered appropriately when asked if they could set aside their personal experiences; could evaluate only the evidence presented; could convict if the government proved its case beyond a reasonable doubt; and could acquit if the government failed in its proof.

Additionally, two members, Colonel M and Lt Col B, had medical backgrounds, Colonel M as a nurse and Lt Col B as a physician. Civilian defense counsel questioned both at length concerning their knowledge of certain prescription drugs and their effects. He also questioned them about their professional and personal relationships with prospective witnesses, including the defense expert witness, Lt Commander (Dr) Branscum.

Following *voir dire,* the appellant was given the opportunity to challenge members for cause and/or peremptorily. Neither civilian defense counsel nor trial counsel challenged any of the members, either peremptorily or for cause. Nor did the appellant make any objection or ask the military judge any question about this procedure.

The appellant now asserts that trial defense counsel's failure to challenge any of the members who had previously been victimized in violent crimes or who had family members who had been involved in such crimes deprived him of effective counsel. The appellant also argues that two court members with medical backgrounds should also have been challenged for cause and counsel's failure to do so is further evidence of his ineffective assistance. In order to determine whether or not counsel's omissions in this case rise to the level of ineffective assistance, we believe

it appropriate to first determine if counsel's performance was deficient. We do so by evaluating whether or not challenges of these members would or should have been successful if raised.

■ R.C.M. 912(f)(A, N), Manual for Courts-Martial, United States (1995 ed.), codifies a general ground for challenge when a member "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." This general ground includes both actual and "implied bias." *United States v. Minyard,* 46 M.J. 229, 231 (1997); *United States v. Daulton,* 45 M.J. 212, 217 (1996); *United States v. Harris,* 13 M.J. 288, 292 (C.M.A.1982). The purpose behind the rule is to avoid even the appearance of unfairness in our court proceeding and to avoid even a perception that a member has a bias or predisposition in the case. *Minyard,* 46 M.J. at 231; *United States v. Dale,* 42 M.J. 384, 386 (1995); *United States v. Lake,* 36 M.J. 317, 323 (C.M.A.1993). Actual bias is essentially a question of credibility while implied bias is reviewed under an objective standard as if viewed through the eyes of the public. *Minyard,* 46 M.J. at 231; *Daulton,* 45 M.J. at 217.

## CHALLENGES ON THE BASIS OF MEDICAL BACKGROUND

■ A thorough review of the record of trial makes it abundantly clear that defense counsel had three theories on which he built his case. First, the appellant suffered from diminished capacity as the result of voluntary ingestion of prescription medications and alcohol which induced a blackout. Second, the appellant was himself a victim of both physical and sexual abuse and neglect as a child. Third, the appellant had a reputation in his community for respecting women and being a law abiding person.

In support of his primary theory, defense counsel called Dr Branscum, a psychiatrist who had treated the appellant for some months. Dr Branscum testified not only about the appellant's mental health history and alcoholism, but also about the effects of the three medications which Dr Branscum

and a neurologist had prescribed for him, and that those effects would be "potentiated" by ingestion of alcohol. It is evident from the careful and detailed *voir dire* conducted by defense counsel of both Col M and Lt Col B, that counsel understood that each of these members knew and understood the effects of the three drugs described by Dr Branscum. It is also obvious from counsel's inquiries of these two members that they each knew and respected Dr Branscum. Thus, it is abundantly clear that counsel for the defense intentionally failed to challenge these members in the hope that their understanding of the drugs used by the appellant and their respect for the defense "expert" witness, would prove favorable to defense.

Appellate defense counsel urges us to apply the reasoning in *United States v. Conley*, 4 M.J. 327 (C.M.A.1978), to find that Col M and Lt Col B should have been excluded from this court. In *Conley*, the court was faced with determining whether or not the military judge in a bench trial should have sustained the defense challenge of the judge in light of the judge's admission that he was a certified documents examiner and that he was "of the opinion that it would probably be impossible to disregard that knowledge" while comparing signatures between prosecution exhibits in the case. Here, defense made no challenge of these members even after fairly extensive *voir dire* of each. Clearly defense counsel was aware of the medical and scientific backgrounds of these two members. It is equally clear that defense counsel knew he would be calling another doctor with whom both members were acquainted professionally to testify about the effects of certain prescription drugs. It appears to us that defense counsel believed that the presence of these two members on the panel would enhance his ability to convince the members that these drugs resulted in the diminished capacity on which the defense so heavily relied. Under these specific circumstances, we find that the medical expertise of these two members did not disqualify them from serving on this court. Furthermore, we will not establish a *per se* rule to disqualify court members simply because they possess some expertise in a field in some way related to the case. *See United States v. Towers*, 24 M.J. 143, 146 (C.M.A.1987).

## CHALLENGES OF MEMBERS OF SIMILAR CRIMES

The appellant also argues that five court members should have been challenged because they or their family members were victims of similar crimes. We cannot agree with counsel that being robbed at knife point in a foreign country (Lt Col B) is sufficiently closely related to the facts in this case to give rise to an obvious challenge for cause. Moreover, based on his answers to detailed *voir dire*, we find that Lt Col B was not subject to challenge for cause on this basis. The assault which Col M described (being followed at night on a dark street by someone with a knife) and the assault on Lt W's wife, while more closely related to the facts at issue in this case, each happened several years prior to trial. Col M was accosted before she entered the Air Force and Lt W's wife when she was 11 years old. Each is, therefore, so "attenuated by the passage of time" and sufficiently different from the crimes at issue here that the members' assertions that they would be unaffected by those prior crimes could have been reasonably accepted by the military judge even if defense had attempted to challenge them. *United States v. Fulton*, 44 M.J. 100, 101 (1996).

We are then left to consider the prior experiences of Maj P, whose sister had been raped recently, and Lt M, herself a rape victim. We are less concerned by the presence of Maj P as a court member in part because he was not himself a victim, but also because his answers to questions about the rape of his sister lead us to conclude that he was not emotionally or personally traumatized by the offense. Specifically, when asked if his sister's assailant had been court-martialed he answered, "I *think* there was and he received some time in jail." (emphasis added). Moreover, Maj P answered questions from both counsel concerning his ability to set aside his sister's experience and be fair in this case with an unequivocal, "Yes."

Merely having a family member who has been the victim of a similar crime is not *per se* disqualifying for court membership.

*United States v. Jefferson,* 44 M.J. 312, 321 (1996); *United States v. Brown,* 34 M.J. 105, 110 (C.M.A.1992); *United States v. Reichardt,* 28 M.J. 113, 116 (C.M.A.1989); *United States v. Smart,* 21 M.J. 15, 20 (C.M.A. 1985). Therefore, even if Maj P had been challenged, we find that the military judge could reasonably have rejected that challenge. Under these circumstances we decline to find that defense counsel was ineffective for failing to challenge this member. However, the question of the suitability of an actual rape victim, Lt M, as a court member is less easily resolved.

 Appellate defense counsel argues that Lt M should have been challenged and removed because her experience as a rape victim would "affect her understanding and interpretation of the evidence;" that her assertions that she could and would be fair were not sufficient to overcome the appearance of evil; and that as a victim herself, she would be more inclined to impose a stringent sentence on a rapist "if given the opportunity to do so." While we certainly agree that the fact of her having been raped should have given defense counsel and trial counsel, for that matter, concern over her ability to fairly and impartially consider the evidence, we are no more convinced than the United States Court of Military Appeals (now USCAAF) was in *Smart* that being a victim of the same crime of which the accused is charged automatically excludes the potential member. *Smart,* 21 M.J. at 20.

Having determined that her status as a victim does not in and of itself disqualify Lt M, we must turn our attention to the *voir dire* to determine whether or not sufficient questions were asked to determine the likelihood that this member could indeed serve impartially. The questions asked of Lt M shed some light on the circumstances surrounding her assault. She stated that in 1988, about six years prior to the appellant's trial, she was raped by a man she had come "into contact with" that evening. When asked if her assailant had been "brought to justice," she responded, "No." Additionally, both trial and defense counsel, as well as the military judge, asked a series of questions designed to determine whether or not Lt M could properly evaluate the evidence and give the appellant a fair hearing.

Trial counsel asked, "Do you feel that … that experience in your life somehow would prejudice your consideration of the facts in this case?" Lt M responded, "No, I do not." When defense counsel asked, "Now, is there anything based on that situation [your having been raped] that would have an impact on how you would judge [the appellant], as far as being fair and impartial?" Lt M responded, "No, any decision that I would make would be based on evidence, and evidence alone." Similarly, defense counsel told her that there was DNA evidence that "says that [the appellant] did it." He then asked if she could nevertheless wait to hear all of the evidence before making a determination of guilt or innocence. Lt M responded, "It would have to be a collective evidence together to base the decision." When defense counsel asked if she could vote for no sentence even if the appellant was found guilty, Lt M responded, "Sure." Finally, the military judge questioned the member asking if she could base her decisions "solely on the law" as he instructed and on the evidence presented in court, setting aside her own "assault experience." She responded, "I don't feel I'd have any difficulty doing so." When the military judge asked if she believed her "personal assault" would have any effect on her ability to serve impartially and fairly in the case, Lt M responded, "No, sir."

Thus, we are not faced with the situation that confronted the Court in *Smart* when reviewing the judge's denial of a challenge to Captain Harrison, a member who had given equivocal answers to *voir dire* questions. Rather, Lt M's answers to every question posed were, like those of Sergeant First Class Fair in *Smart,* both forthright and frequently in full sentences rather than mere affirmative and negative replies. Like Sergeant First Class Fair, Lt M had been the victim of a traumatic event, and like him, we believe her to have been sincere in her assertions that she could and would set that experience aside in deliberating on the appellant's case. In *Smart,* the Court found that Sergeant First Class Fair should have been removed. If we were to blindly follow that

lead, we would declare Lt M's inclusion on the panel inappropriate as an affront to judicial fairness, or at least the appearance of fairness. However, unlike the Court in *Smart*, we are asked not to a override a judge's denial of a defense challenge, but to second guess a defense decision not to challenge this member. Therefore, before reaching that conclusion we must first determine whether or not defense counsel made a tactical decision not to raise this challenge.

From *voir dire* through closing argument it was clear that defense counsel hoped to convince the court that his client suffered from diminished capacity. It was also clear defense counsel hoped to gain sympathy for the appellant from these court members. During *voir dire,* counsel advised the members that there was a defense based on intoxication from prescription drugs and alcohol as well as his mental health and family history. Few details were given about either, but each member was asked if he or she could wait until all of the evidence was in and consider these defenses. During opening statement defense counsel pointed out that "[t]here's a number of members that (sic) have had prior sexual experiences or family members may have had some type of sexual encounters on the negative side." He went on to point out that he had asked them to "put those things aside" and evaluate "this case on its own merits." However, later in his argument he reminded them of the judge's instruction to "use your common sense *and your own experiences* as you see things." (emphasis added). It is clear to us that defense counsel wanted the members to rely on their own experiences as victims in evaluating the appellant's actions.

While at first blush, one may question the strategy of leaving a rape victim on this court, we cannot say that it was wholly unrealistic to expect a rape victim to empathize with the appellant. It is particularly difficult to brand counsel as ineffective when the trial was some 6 years after the attack on the member and the facts and circumstances educed during *voir dire* make it appear, at least, that Lt M was the victim not of an unknown intruder, but someone she had met that night. Here, although one victim recog-

nized her attacker, both the rape and assault were committed at night, in the dark, after the appellant entered the victims' rooms without their knowledge or permission, with the apparent intent to remain unknown. Thus, Lt M's rape by an acquaintance was sufficiently different from the circumstances in this case that defense counsel might well have believed he could induce her to sympathize with the appellant's abusive upbringing.

Nor are we moved by the appellant's 12 June 1995 letter to us in which he states that if he "had known [he] could have challenged these members for cause then [he] would have exercised that rught (sic)." Before deciding whether or not to challenge any members, civilian defense counsel asked for and was given a recess to consult with co-counsel *and* the appellant. We may infer that the appellant was present during that consultation and while we do not know the nature or extent of those discussions, we do know from the record that the recess taken was nearly twice as long as that requested (19 minutes versus 10 minutes). Additionally, the appellant was present when the judge instructed the court members about the need for complete impartiality and that "[b]oth sides have unlimited numbers of challenges for cause." He was also present both before and after the defense requested recess when the judge asked his counsel if there were any challenges. It is inconceivable to us that he did not know that he could challenge members. Rather, we find that his counsel made a tactical decision to forego challenges hoping to obtain a sympathetic court, and the appellant was aware of that choice during trial.

Having concluded that defense counsel had a realistic strategy we resolve the first prong of the *Strickland* test by finding that defense counsel's performance was not so deficient, the alleged errors were not so serious that the counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Having made this determination we are satisfied that the appellant was not deprived of effective assistance of counsel. Thus, it is unnecessary for us to consider the second prong of the *Strickland* test: did the errors result in prejudice to the appellant's ability to receive a fair trial the result of which was

reliable? Nevertheless, we will briefly note that the evidence in support of the court's findings was overwhelming. The DNA test results identified the appellant as 1 in 6.4 billion members of the black population with that exact DNA combination; the assault victim recognized his voice and asked during the attack, "Lou, why are you doing this?" to which he responded; the assault victim also gave a description of the clothing he was wearing and knew the time he left her room; another witness saw him returning to his own room at about the same time wearing similar clothes; seven letters from the appellant to JB requested her testimony and advised her not to talk to investigators; JB testified that she was not with him and would not lie to give him an alibi; testimony from the appellant's own expert witness, Dr Branscum, indicated that the purposeful actions with which he was charged indicated an intent to perform those actions and that one in an amnestic state would not ordinarily commit an act which would not be done when fully aware. Faced with such powerful evidence and testimony, we find it inconceivable that any court would have found the appellant not guilty.

Additionally, in light of the unequivocal *voir dire* answers given by each of these members, their active involvement during the trial, and the military judge's detailed instructions to the jury, we are satisfied that all of the supposedly suspect members discharged their duties appropriately and conscientiously. As the Supreme Court has noted, it is "the almost invariable assumption of the law that jurors follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 206, 107 S.Ct. 1702, 1707, 95 L.Ed.2d 176 (1987). Appellate courts regularly presume that jurors are aware of the seriousness of their task and that they carefully heed the court's instructions. *Francis v. Franklin*, 471 U.S. 307, 324, n. 9, 105 S.Ct. 1965, 1976, n. 9, 85 L.Ed.2d 344 (1985). We also "presume ... that the ... jury acted according to law." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Therefore, having found no prejudice to the appellant from his counsel's failure to challenge any of the five members about whom appellate defense counsel complains, and having found no evidence in the record indicating any bias or prejudice on the part of any member, we decline to question the integrity of these officers.

After examining the record of trial and the assignment of error, we once again conclude that the findings and sentence are correct in law and fact, and we find no errors prejudicial to the appellant's substantial rights. Accordingly, the findings and sentence are

AFFIRMED.

Chief Judge ROTHENBURG and Senior Judge SCHREIER concur.