UNITED STATES, Appellee,

v.

Brian L. TOWERS, Technical Sergeant, U.S. Air Force, Appellant.

No. 55,027.
ACM 25116.

U.S. Court of Military Appeals.

June 8, 1987.

For Appellant: *Colonel Leo L. Sergi* and *Captain Timothy J. Malloy* (on brief).

For Appellee: *Colonel Kenneth R. Rengert* and *Lieutenant Colonel Robert E. Giovagnoni* (on brief).

*Opinion of the Court*

COX, Judge:

Appellant was tried by general court-martial for committing two indecent acts upon an 8-year-old female child, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934.[1] Despite his pleas, he was convicted and sentenced to be dishonorably discharged, confined for 6 months, and reduced to E-3. The convening authority approved the sentence and the Court of Military Review affirmed in a per curiam opinion. We granted review of the following assigned issue:

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY DISALLOWING A DEFENSE CHALLENGE

---

1. The record of trial contains a DD Form 490, OCT 84, Page 5, which states in footnote 1 in part:

When a verbatim record is prepared, this page will follow the charges and specifications, which are copied verbatim into the record at the point indicated in the sidenote. "Arraignment," Appendix 14, MCM 1984. In the alternative, the original charge sheet (DD Form 458) may be inserted.

This is contrary to R.C.M. 1103(b)(2)(D)(i), Manual for Courts-Martial, United States, 1984, which requires that "a complete record ... include ... [t]he original charge sheet or a duplicate" of the charge sheet (i.e., a photocopy). This requirement "is new." App. 21, Manual, *supra* at A21-70.

FOR CAUSE AGAINST LIEUTENANT RINEHART.

During *voir dire*, one of the court members, Second Lieutenant Kelly Rinehart, stated that before joining the Air Force she had been employed as a counselor by the Child Welfare Division of the Wichita County Family and Court Services in Texas for about 2 years. She had been "an intake worker" or counselor who handled "incoming calls" reporting child abuse or neglect.[2] While in that position, she was called to testify in court "around 25 or 30 times." On at least two occasions she testified for the defense, but the majority of her court appearances were at the request of the local district attorney. When asked by trial counsel if she felt she could "base ... [her] decision in this case solely on the evidence ... [she would] hear" at trial, she responded, "I certainly do."

Later, when the military judge asked if defense counsel had "a challenge for cause," counsel replied that he did and named Lieutenant Rinehart. He based the challenge on her testimony during *voir dire*, as follows:

> She has stated that [in her previous position] she ... [had] been the investigating officer ... in over a hundred cases, and ... [had] testified as an intake counselor ... for social services in over 20 cases, ... and that she ... [had] investigated numerous cases ... [involving] similar allegations [to those made here]. Regardless of the answers ... she gave from the stand, ... [her experience] ... obviously [was] going to have some at least subjective or objective influence on her.

When the military judge advised counsel that he knew of nothing that required court members "to leave their experience at the door of the courtroom," counsel replied that he had

some other information that, at least at one point in time, she ... made a statement in the presence of ... other people that, in her capacity as a witness, ... she was somewhat disgruntled with defense attorneys and the positions they put her in as a witness.

The judge pointed out that counsel had not elicited any such information during *voir dire*. Defense counsel then stated that he wished to call another witness who would testify "to that effect." The military judge denied this request, but permitted the defense to recall Lieutenant Rinehart. The defense resumed questions on *voir dire*, as follows:

> ADC: ... Do you recall a conversation ... at the Officers' Club on one Friday afternoon, ... in the presence of some of the other attorneys here in the office concerning the position you'd been put in as a witness in your job by defense attorneys?
>
> MEM: I recall a conversation in which I expressed how I felt on the stand, being questioned by attorneys in general.
>
> ADC: Do you recall any part specifically about the defense attorneys?
>
> MEM: About defense attorneys?
>
> ADC: Right, the corner they tried to paint you into, or the tactics they used.
>
> MEM: No, not specifically about defense attorneys. Perhaps if you can refresh my memory.
>
> \* \* \* \* \* \*
>
> ADC: Okay, the comment was just something to the effect that, ... defense attorneys tried to trick you, or to mislead you, or to twist around your testimony to get, you know ...
>
> MEM: Now, my comment was about—if the court will excuse me—about attorneys in general, and the way that I believe I expressed at that point, I had sat up on the witness stand and felt

---

2. She described the duties of her civilian job as that of "an intake worker," a person who received the incoming calls reporting child abuse or neglect. After receiving a call, she was responsible for conducting "the initial investigation"—she was the first person to contact the family, present them with the problem, and do investigative work. If a child was to be removed from the family, she would work with the district attorney and county judge to obtain the necessary court orders.

like a piece of raw meat and that was from both sides involved, but ...[3]

ADC: You wouldn't draw any inference one way or another from either the prosecution or the defense?

MEM: No.

When Lieutenant Rinehart was once again excused from the stand, defense counsel challenged her for cause. He based this challenge on the contention

that Lieutenant Rinehart, despite her best intentions and despite her statements that she ... [could] be fair and unbiased, is clearly an expert in this area, and I think we pose a serious danger by putting an expert on the panel with other members who are lay people concerning this issue, who appear to have at least no expertise concerning how to deal with these cases. We're concerned that this one particular member may carry, because of that expertise, an unfair weight in her persuasion because ... they will ... discuss these matters amongst themselves, ... and we're ... concerned that allowing this member to stay on this panel will be prejudicial to the accused's right to a fair and objective hearing.

The military judge denied the challenge, stating:

[T]he member never testified she ever worked for the prosecution; she testified that she worked for ... [a] particular organization ... and that because of that work she had occasions to testify and most of the time it was ... for the government but, indeed, on a couple of occasions, she testified for the defense. As counsel for both sides are aware, this court is very liberal when it comes to challenges for cause. This court is concerned not only about the propriety, but by the appearance of propriety, and I just do not believe it is proper, necessary,

or appropriate to grant a challenge for cause, based on the responses of that court member to the questions of counsel, or based on the fact that she had that particular job or duty in the past as a civilian. The challenge for cause is without merit and is denied.

Defense counsel elected to peremptorily challenge another member, Major Muller, and not Lieutenant Rinehart.

■ Before us appellate defense counsel assert that the military judge abused his discretion when he denied the defense challenge for cause, and they base this assertion on our decision in *United States v. Smart*, 21 M.J. 15 (C.M.A.1985), and R.C.M. 912f(1), Manual for Courts-Martial, United States, 1984.

In *Smart*, the accused was charged with and pleaded guilty to two specifications of robbery "by confronting sales clerks with what appeared to be a .45–caliber pistol." 21 M.J. at 16. He elected to be tried by a court-martial having both officer and enlisted members. After entry of the guilty findings, the court members were sworn and a *voir dire* was conducted. During *voir dire*, two members—one an officer and the other an enlisted man—testified that they had been *victims* of robberies. Defense counsel's challenges for cause against these two members were denied by the military judge. We held that the military judge erred in denying these challenges.[4]

Unlike *Smart*, there is nothing in this record that indicates the challenged member was ever, herself, a *victim* of child abuse, neglect, or sexual child abuse. Her only fault—if, indeed, she had any—was that she personally had worked with the victims of such crimes.

Neither law nor logic demands that a court-martial be detailed with members de-

---

3. We ascribe no decisional significance to these remarks since they reflect feelings that probably are common to many witnesses who have testified in contested cases.

4. In *United States v. Smart*, 21 M.J. 15, 21 (C.M.A.1985) (Cox, J., concurring), I stated:

I do not intend to create any rule of law known as "implied bias" where a prospective court member has been the victim of a crime similar to the one charged.

void of the common experiences of mankind. Article 25(d)(2), UCMJ, 10 U.S.C. § 825(d)(2), requires a convening authority to select members who "are best qualified for the duty by reason of age, education, training, *experience*, length of service, and judicial temperament" (emphasis added). Supply officers, comptrollers, and financial specialists are routinely selected to sit as court members in cases involving complicated accounting procedures; it would be foolish to ignore such experience. We simply are unwilling to adopt a rule that would require the automatic disqualification of any person from serving as a court-martial member simply because that individual possesses some degree of expertise in a field related to that which is the substance of the charges against an accused. *See United States v. Johnson*, 23 M.J. 327 (C.M.A. 1987).

■ The record before us does not demonstrate in any way that Lieutenant Rinehart was biased or prejudiced against this appellant because of her previous work experience. Furthermore, it does not disclose any indication that she was not able to decide appellant's guilt or innocence in any manner other than by exposure to and evaluation of the evidence presented in court.[5]

Under these circumstances we decline to establish a *per se* rule of exclusion which is based solely upon an individual's prior employment experiences. Finding no showing of a clearly defined nexus between Lieutenant Rinehart's previous experience and the charges in this particular case, we hold that this military judge did not abuse his discretion when he denied trial defense counsel's challenge for cause.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge EVERETT and Judge SULLIVAN concur.

---

5. Of course, "experience" is always a two-edged sword. If the accused were innocent, Lieutenant Rinehart's "experience" might have aided in detecting false testimony by the alleged victim. On the other hand, if the victim were telling the truth, her "experience" might well tend to discredit the accused's story. The questions asked by Lieutenant Rinehart of the accused seem more directed at the family organization than at the alleged offenses themselves.