UNITED STATES, Appellee,

v.

Samuel V. BERRY, Mess Management
Specialist Third Class, U.S. Navy,
Appellant.

No. 66,098.

NMCM 90 0167.

Court of Military Appeals.

Argued Oct. 4, 1991.

Decided Feb. 21, 1992.

For Appellant: Major R.T. McNeil,
USMC (argued); Lieutenant Tamara A.
Massengale, JAGC, USNR (on brief); Cap-
tain Dwight H. Sullivan, USMC.

For Appellee: Major Laura L. Scudder,
USMC (argued); Commander Thomas W.
Osborne, JAGC, USN (on brief).

*Opinion of the Court*

SULLIVAN, Chief Judge:

On September 20 and 23, 1989, appellant
was tried by a special court-martial consist-
ing of officer and enlisted members at the
Naval Legal Service Office, Treasure Is-
land, San Francisco. Contrary to his pleas,
he was found guilty of three specifications
of larceny, in violation of Article 121, Uni-
form Code of Military Justice, 10 USC
§ 921. He was sentenced to a bad-conduct
discharge, confinement for 89 days, and
reduction to E–1. The convening authority
approved the sentence on January 5, 1990.
The Court of Military Review affirmed
these results on January 14, 1991, in an
unpublished opinion.

This Court granted review on the follow-
ing issue of law:

WHETHER THE NAVY–MARINE
CORPS COURT OF MILITARY RE-
VIEW ERRED IN APPLYING THE
"LIBERAL GRANT MANDATE" ES-
POUSED BY THIS HONORABLE
COURT WHEN IT FOUND THAT THE
GRANTING OF A CHALLENGE FOR
CAUSE "WOULD PROBABLY HAVE
BEEN ADVISABLE," YET RULED
THAT FAILURE TO DO SO WAS NOT
REVERSIBLE ERROR.

We hold that the military judge erred in
denying the defense challenge for cause
under the particular circumstances of this
case. *See United States v. Reichardt*, 28
MJ 113 (CMA 1989).

The following excerpts from the record
of trial in this case contain the *voir dire*

concerning the questioned challenge for cause:

### INDIVIDUAL VOIR DIRE OF MA2 ZABALA

Questions by the defense:

Q. Petty Officer Zabala, when I asked the question [during general *voir dire*], "Do you work at a job which involves arresting people," you nodded affirmatively.

A. Yes.

Q. Could you please explain the details on that job, what you did and where you did it?

A. I am a command duty investigator for NAS Alameda security and my job is to interview and interrogate suspects and also to interview witnesses concerning a variety of charges and complaints. And some times I do have to apprehend people. Do you want to know procedure for apprehending persons?

Q. No. I'd just like to know how many people you have apprehended. .

A. I'd have to say between 45 to 60.

Q. And do you know why you apprehended them?

A. They were at the time suspected of either a military offense or a civilian offense.

Q. I should rephrase the question. What were some of the offenses of the arrested people?

A. I arrested people for assault or larceny or sexual conducts, a variety of charges.

Q. Have you ever testified in court or at mast?

A. No, sir.

Q. You said that you interrogated people.

A. Yes, sir.

Q. Did you work for NIS [Naval Investigative Service]?

A. I've worked in correlation with NIS.

Q. What does correlation mean?

A. I have worked undercover NIS at my last duty station.

Q. Why—for drugs?

A. Trying to locate servicemembers that were dealing and using drugs.

Q. Were you successful?

A. Yes, sir.

Q. Now you said that you interrogate people.

A. Yes, sir.

Q. What do you mean? What do you do?

A. What we try to do is try to have them give us the truth. We try to not coerce, but we try to verify the facts that we receive from complainants and witnesses with what they are stating. And all we do is just try to get to the truth.

Q. Do you work in tandem with NIS?

A. Yes sir.

Q. Roughly, guesstimate, how often are you successful—truth—

A. I would not know exactly, sir, because we do our interrogations and we do our reports or supplemental reports and we sent them up to the command and either UCMJ or NJP. We receive responses but I usually don't check out the responses we get from commands. So I don't know at this time.

DC: I have no further questions, Your Honor.

MJ: All right.

Lieutenant Hoffman, any questions?

Questions by the prosecution:

Q. Petty Officer Zabala, you indicated on your questionnaire for this court-martial that you knew nothing about the case. Is that correct?

A. I believe so, sir.

Q. Have you interviewed or discussed anything with Petty Officer Odom concerning this case?

A. The name doesn't sound familiar, sir. I've interviewed approximately six to eight hundred people since April.

Q. I am just going to give you some names. See if any of them sound familiar that you think you have talked to. How about Petty Officer Lavallee?

A. No, sir.

Q. How about a Petty Officer Serrano?

A. No, sir.

Q. Do you know Special Agent Noble?

A. Yes, sir.

Q. How do you know him?

A. He's our Naval Investigative Service agent, NAS Alameda. I have worked not with him but I have talked to him numerous times on the phone and a couple times I've worked with him just where we had damage to Government— and he'd show up and we would allow them to take over the case.

Q. Have you discussed anything concerning this case with Special Agent Noble?

A. No, sir, I believe not, sir.

Q. Is there anything that would keep you from making a determination on the facts of this case as to what happened and what didn't happen?

A. No, sir.

Q. Anything that would prevent you from sitting as a court-martial member on this case?

A. No, sir.

Q. Do you have any reservation about being a court-martial member in this case?

A. No, sir.

TC: Nothing further, Your Honor.

MJ: Lieutenant Doherty, do you have any more questions?

DC: No questions, Your Honor.

Questions by the military judge:

Q. *Petty Officer Zabala, you could hear the evidence in this case and be impartial as to weighing the evidence and coming out with an outcome?*

A. *Yes, sir.*

Q. *Just because Petty Officer Berry is accused of committing these crimes, do you think he is guilty of them?*

A. *No, sir.*

Q. *Would you listen to witnesses presented by the defense and give them as much consideration as you would give witnesses from the prosecution?*

A. *Yes, sir.*

\* \* \* \* \* \*

MJ: Does the defense have any challenges for cause?

DC: Yes, Your Honor, Petty Officer Zabala.

MJ: On what grounds?

DC: It's the position of the defense that he is a Government tool and the fact that he was worked undercover for the Naval Investigative Service and he has worked on—successfully. He has also arrested people for larceny. Consequently, Your Honor, the nature of his job—it's the position of the defense that the nature of his job will inevitably prejudice him against Petty Officer Berry here today.

Of course, Your Honor, when he answered the question whether or not he would be biased or impartial, he answered he would not be biased or impartial. And, Your Honor, that is basically the answer which one would normally expect to hear under these circumstances. He is not going to say that, yes, he's going to be biased against Petty Officer Berry. He knows that that is not the proper response to give.

MJ: Any comment from the Government?

TC: Yes, sir. The Government accepts the petty officer's statements for their face value that he feels he can impartially try the facts of this case. He has not had any direct involvement in this case. He admitted that he knows Special Agent Noble. He has not had any contact concerning this case. And the fact that he has a job of authority, which many of us do, should not disqualify him from sitting impartially as a member of the panel.

MJ: Well I don't think he said anything that even remotely hints that he could not render a fair judgment in this case. Merely by virtue of his being involved in security business doesn't disqualify him per se.

So I think I am going to deny the challenge for cause of Petty Officer Zabala.

Do you have any peremptory challenges, Lieutenant Hoffman?

TC: Yes, sir, the Government exercises its peremptory challenge on Lieutenant Augustave. And I'd like to say on the record that I believe that because he broke his plans or his commitment today and his anniversary tomorrow that I think he'll have things on his mind or other things to deal with outside of the courtroom not necessarily to bring it to the level of a challenge for cause. But that is my reason for challenging him. That was my peremptory challenge.

MJ: All right.

Does defense have any peremptory challenge?

TC: Yes, Your Honor, Lieutenant Morgerson.

MJ: All right.

Petty Officer Zabala again. I was just looking at the rule [RCM 912(f)(1)(N)] about the challenges for cause and here's one that says, "It would be disqualified if you should not sit as a member in the interest of having a court-martial free from substantial doubt as to legality, fairness, and impartiality." Being as heavily involved in law enforcement duties—well he said he was impartial. What do you think of that provision? I know you didn't cite any particular reason why he should be removed for cause in your argument.

DC: Your Honor, I think I was negligent or remiss. I should have cited that provision because that basically sums it up fine and challenge for cause I don't think he would be fair in his thinking toward my client today, Your Honor.

MJ: Any comment from the Government?

TC: Yes, sir.

Before commenting on "N," I'd just like to make note that under 912(f), it indicates that a person has been an investigating officer as to any offense charged that would be a challenge—

grounds for a challenge for removal for cause. And I think that reflects the spirit of that particular challenge, that is, if someone has investigated those particular facts of that case or has been involved in determining the truth in a particular case. Now if we want to get "N," it refers to legality, fairness, and impartiality. And certainly legality is not a factor in this case. And so then we get back to fairness and impartiality. And the member was questioned extensively by the defense to determine whether or not he in any way would be prejudiced or would reflect certain viewpoints and he indicated that he could— that he was not prejudice[d], first off; that he had not been involved in anything involving these particular facts; that his job is involved in finding justice, finding the truth, not for either particular side; that he doesn't follow-up to see whether the people that he has arrested or been involved with are actually convicted which would reflect that he has no particular personal interest in those matters. And the last is the impartiality which, again, the Government has to take his word at face value. We don't doubt any of the members' responses as well as we don't doubt any of the witnesses or the accused until the facts of the case come out.

Again, the Government would strongly oppose any challenge for cause based on 912(f).

DC: Your Honor, Petty Officer Zabala has been an active member of the NIS. He has worked undercover for the NIS and, consequently, he has basically been a tool of the NIS for that period of time.

MJ: Well doesn't (f)(1)(N) concentrate more on the perception of people outside the courtroom rather than whether or not Petty Officer Zabala, himself, can be impartial?

TC: Well it does say, "substantial doubt," Your Honor. And, again, I think that is something that has to be determined in the courtroom this morning, what is "substantial doubt"? If Petty

Officer Zabala has responded in any prejudicial way or had shown any interest in convicting this man or that his record would be tarnished by not convicting a person or that he had close relationships with people that had an interest in this case or anything of that nature, then the Government would agree that would cause substantial doubt. But just because Petty Officer Zabala currently holds a position in law enforcement and has worked with NIS should not be a reason to disqualify him for cause any more than any of the other members who have had a position in the past as the investigating officer on a ship, as the XO, as a Master-at-Arms or any other thing involving law enforcement. The Government does not agree that that brings this particular case to a level of substantial doubt.

MJ: Okay. Thank you.

You peremptorily challenged Lieutenant Augustave?

TC: Yes, sir.

MJ: And you peremptorily challenged Lieutenant Morgerson?

DC: Your Honor, have you made a ruling on the challenge for cause? Does that stand? Is that final?

MJ: No, I haven't. I am still thinking.

DC: I would withdraw my peremptory challenge for the moment, Your Honor.

MJ: Well I think we can consider paragraph (f)(1)(N) and the statements of Petty Officer Zabala and I don't think just by virtue of the fact that he is a law enforcement official would disqualify him for cause under (f)(1)(N).

So in reconsidering that, the challenge for cause is still denied.

All right. So who do we have now? You've challenged Lieutenant Augustave. Who's your peremptory challenge?

DC: Lieutenant Morgerson.

(Emphasis added.)

---

■ The voir dire of Petty Officer Zabala established three uncontroverted facts: First, this court-martial member was a former Naval Investigative Service undercover agent who had been recently deployed to combat drug use, one of the crimes charged against appellant. *Cf. United States v. Larouche*, 896 F.2d 815, 830 (4th Cir.), *cert. denied*, 496 U.S. 927, 110 S.Ct. 2621, 110 L.Ed.2d 642 (1990). Second, this member was presently assigned as a command duty investigator for the Naval Air Station, Alameda, the situs of the Bachelor Enlisted Quarters where appellant's alleged larcenies took place. *Cf. Rogers v. Rulo*, 712 F.2d 363, 367 (8th 1983), *cert. denied*, 464 U.S. 1046, 104 S.Ct. 719, 79 L.Ed.2d 181 (1984). Third, Petty Officer Zabala knew and on occasion worked with Special Agent Noble, a critical witness against appellant and a person with whom Petty Officer Zabala would work in the future. *Cf. United States v. Bradshaw*, 787 F.2d 1385, 1390 (10th Cir.1986). These circumstances, while not individually disqualifying in themselves, together reasonably raised a substantial question as to the impartiality of Petty Officer Zabala sitting as a member in this case. *See United States v. Harris*, 13 MJ 288, 292 (CMA 1982); *see generally* RCM 912(f)(1)(N), Manual for Courts-Martial, United States, 1984.*

■ The military judge responded to this situation by asking a few general questions concerning the member's impartiality. Petty Officer Zabala answered these plainly leading questions in a summary fashion

---

* (f) *Challenges and removal for cause.*

    (1) *Grounds.* A member shall be excused for cause whenever it appears that the member:

       \*      \*      \*      \*      \*      \*

    (N) *Should not sit as a member in the interest of having the court-martial free from*

    *substantial doubt as to legality, fairness, and impartiality.*

(Emphasis added.)

without explanation or detail. Such naked disclaimers this Court has traditionally rejected, and we do so again today. *See United States v. Reichardt*, 28 MJ 113 (CMA 1989). *Cf. United States v. Jobson*, 31 MJ 117 (CMA 1990). Thus, the possible biases of this member, both institutional and personal, which stand unrebutted and unexplained, disqualified him from court-martial service in this case. *See generally* Drafters' Analysis of RCM 912(f)(3), Manual, *supra* at A21–54. Courts-martial must not only be fair but must appear fair to effectively further the cause of good order and discipline in the armed forces. *See generally* RCM 912(f)(1)(N); *see also United States v. Jobson, supra* at 122 (Sullivan, J., concurring); *United States v. Rosser*, 6 MJ 267, 273 n. 19 (CMA 1979).

The decision of the United States Navy–Marine Corps Court of Military Review is reversed. The findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Senior Judge EVERETT concurs.

Judges CRAWFORD, GIERKE, and WISS did not participate.

COX, Judge (concurring):

I write only to underscore the point that there is no *per se* rule in the military that bars present or former law enforcement officials from serving as court members. *Cf.* Annotation, *Law Enforcement Officers as Qualified Jurors in Criminal Cases*, 72 A.L.R.3d 895 (1976); Annotation, *Former Law Enforcement Officers as Qualified Jurors in Criminal Cases*, 72 A.L.R.3d 958 (1976). Such a rule could readily be established by statute or regulation if considered desirable by proper authorities. *See* 28 USC § 1863(b)(6).

Of course it is possible that some who work in law enforcement have developed a general bias against people accused of crime. Certainly some who do not work in law enforcement have such biases. That is why we have *voir dire* and challenges.

I agree with the majority opinion that the military judge abused his discretion in denying the challenge against Petty Officer Zabala. I do so on the ground of Zabala's close professional relationship with the principal prosecution witness, Special Agent Noble. Zabala's own law enforcement experience, past and present, is of no moment in itself. Like the military judge, I can glean no hint from the *voir dire* that Zabala had an attitude regarding appellant or others similarly situated that would render him unfit for court-martial membership.

For this reason, I concur.