UNITED STATES

v.

**Niguel R. OVANDO–MORAN, 217–11– 2691, Boiler Technician Fireman Recruit (E–1), U.S. Navy.**

NMCM 94 02075.

U.S. Navy–Marine Corps
Court of Criminal Appeals.

7 Aug. 1996.

Capt J.F. Havranek, USMC, Appellate Defense Counsel.

Maj S.P. Finn, USMC, Appellate Government Counsel.

LtCol Charles H. Pangburn III, USMCR, Appellate Government Counsel.

Before DeCICCO, McLAUGHLIN and CLARK, Appellate Military Judges.

CLARK, Senior Judge:

At his general court-martial, the appellant pleaded guilty to unauthorized absence, in violation of Uniform Code of Military Justice [UCMJ], Article 86, 10 U.S.C. § 886. Contrary to the appellant's pleas, the members convicted him of rape, forcible sodomy, and unlawful entry, in violation of UCMJ, Articles 120, 125, and 134, respectively, 10 U.S.C. §§ 920, 925, and 934. The convening authority approved the adjudged sentence, which included confinement for 42 months, forfeitures of $400.00 pay per month for 42 months, and a dishonorable discharge. We affirm the findings and the sentence.

The appellant has raised four assignments of error. We will discuss each of them separately.

I. THE MILITARY JUDGE ERRED BY DENYING TRIAL DEFENSE COUNSEL'S CHALLENGE FOR CAUSE AGAINST CAPTAIN POLLAND AND LIEUTENANT MCNEILAN.

During the group *voir dire* of the members, Lieutenant McNeilan indicated that he would hold it against the appellant if the appellant did not testify on his own behalf. Record at 128. During the individual *voir dire* of Lieutenant McNeilan, the following colloquy occurred:

MJ: Could you follow my instructions on the law with respect to how you should treat an election not to testify?

MEMBER [Lieutenant McNeilan]: Yes, sir.

MJ: When the question was first asked, was there any confusion in your mind? What was your thinking on that?

MEMBER [Lieutenant McNeilan]: My feeling was, sir, that although he does not have the requirement to testify or anything like that, to me it would be unnatural. If I were innocent of something I would not sit quietly by.

MJ: Okay. Now, how do you feel about that in the context of what I've explained to you with respect to what his right is in that regard?

MEMBER [Lieutenant McNeilan]: I understand, sir. I would not hold it against him.

MJ: Is there any doubt in your mind about that?

MEMBER [Lieutenant McNeilan]: No, sir. I would still think it's unnatural, but I would not—I would not say that that indicated guilt or innocence.

MJ: So you would not draw any inference at all from his election to remain silent if he chooses to do so?

MEMBER [Lieutenant McNeilan]: That's correct, sir. I still would think it would be unnatural, but—

MJ: —in your [inaudible] thought process in analyzing the case?

MEMBER [Lieutenant McNeilan]: Oh, yes, sir.

Record at 160–161. The military judge denied a challenge for cause of Lieutenant McNeilan. The trial defense counsel peremptorily challenged Lieutenant McNeilan. He preserved the issue by stating that, had the challenge for cause been granted, the defense would have peremptorily challenged Captain Polland. *See* Rule for Courts–Martial [R.C.M.] 912(f)(4), Manual for Courts–Martial, United States (1995 ed.); *United States v. Jobson*, 31 M.J. 117 (C.M.A.1990).

■ The military judge shall determine the relevance and validity of challenges for cause. UCMJ, Article 41(a)(1). The standard of review is whether the military judge abused his discretion in not granting a challenge for cause. *United States v. Ingham*, 42 M.J. 218 (1995). In applying this standard, Courts of Criminal Appeals may give great deference to the fact that the military judge observed the demeanor of the participants in the *voir dire* and challenge process. *United States v. White*, 36 M.J. 284 (C.M.A.

1993), *cert. denied,* 510 U.S. 1090, 114 S.Ct. 918, 127 L.Ed.2d 212 (1994).

Rule for Courts–Martial 912(f)(1) lists the criteria for evaluating the relevance and validity of challenges for cause. The military judge must excuse a member for cause when it appears that the member should not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality. R.C.M. 912(f)(1)(N).

The ground for challenge stated in R.C.M. 912(f)(1)(N) is the only one of the 14 listed grounds which is based upon subjective perceptions. It is the only one of the listed grounds which has a Discussion section which purports to further clarify it by citing examples. The examples cited do not apply to the circumstances of the appellant's challenge for cause of Lieutenant McNeilan. Therefore, we must focus on whether denial of the challenge for cause created the perception or appearance of unfairness of the military justice system. *United States v. Dale,* 42 M.J. 384, 386 (1995); *United States v. Berry,* 34 M.J. 83 (C.M.A.1992).

■ Lieutenant McNeilan stated that he would consider it unnatural if an accused declined to testify. We do not perceive this statement as representing a personal bias against the appellant. Notwithstanding Constitutional and statutory protections against compulsory self-incrimination, appellate courts have recognized that failing to respond to accusations of wrongdoing, in some circumstances, may be legitimately perceived as having evidentiary significance. *See United States v. Wynn,* 23 M.J. 726 (A.F.C.M.R. 1986) (silence when confronted with accusations by a private party may constitute an admission by silence), *affirmed,* 29 M.J. 143 (C.M.A.1989); *United States v. Cain,* 5 M.J. 844 (A.C.M.R.1978) (failing to respond to the victim accusing the accused of "taking" the victim's money was fairly commented upon in argument as an "admission by silence" in a court-martial for robbery). Failing to speak up when a reasonable person would be expected to deny an accusation may even be perceived as an adoptive admission. S. SALTZBURG, ET AL., MILITARY RULES OF EVIDENCE MANUAL, 3d ed. 764, 770 (1991). We

perceive this evidentiary significance as being grounded in the notion that it is natural to deny an accusation of wrongdoing. Therefore, Lieutenant McNeilan's statement merely described his perception of human nature.

The test is not whether Lieutenant McNeilan had a misperception of human nature or of the evidentiary rules. It is whether he had an inelastic attitude about the guilt or innocence of an accused who does not testify. *United States v. Tippit,* 9 M.J. 106 (C.M.A.1980). The military judge explained to Lieutenant McNeilan that the appellant was not required to display conduct which Lieutenant McNeilan viewed as "natural" in the face of the allegations. Lieutenant McNeilan stated, unequivocally, that he would set aside his preconceptions and would follow the military judge's instruction to disregard the appellant's silence. Apparently, the military judge perceived the statement as sincere. We have no reason to believe otherwise. *See Dale,* 42 M.J. at 386.

Since we find no error in the military judge's denial of the appellant's challenge for cause against Lieutenant McNeilan, we need not examine the military judge's ruling for prejudice to the appellant. Also, we do not consider trial tactics employed by the parties after the military judge's ruling. However, we note that the appellant did testify at his court-martial. Record at 654–721. Therefore, even had Lieutenant McNeilan not been excused from the panel, any perceptions he entertained about the significance of an accused failing to testify would have been irrelevant to the appellant's case.

The trial defense counsel challenged Captain Polland because he was a medical officer. During *voir dire* Captain Polland stated that he had seen "a couple of cases" involving sexual assault and that 34 years previously he had known of an individual who was assaulted. Record at 135. He also said that he had read about post traumatic stress disorder and had seen some cases during his 10 years with the SEAL Team. He assured the defense counsel that he would follow the military judge's instructions and would not let his personal medical knowledge influence the other members. Record at 140. Despite this assurance, the defense counsel chal-

lenged Captain Polland, speculating that Captain Polland might use his own medical training to overrule the testimony of other medical officers who might testify.[1]

■ Captain Polland's training and experiences as a medical officer did not render him disqualified to serve as a member of the appellant's court-martial, where medical testimony was presented. If a member has technical expertise in an area which is the subject of a court-martial, the member is not automatically disqualified from sitting as a member. *White*, 36 M.J. 284; *United States v. Towers*, 24 M.J. 143 (C.M.A.1987); *United States v. Barrow*, 42 M.J. 655 (A.F.Ct.Crim. App.1995). The military judge did not abuse his discretion in denying the appellant's challenge for cause against Captain Polland.

## II. JUROR MISCONDUCT OCCURRED WHERE EXTRANEOUS PREJUDICIAL INFORMATION WAS IMPROPERLY BROUGHT TO THE ATTENTION OF THE MEMBERS AND WHERE THE MEMBERS FAILED TO FOLLOW THE INSTRUCTIONS OF THE MILITARY JUDGE.

As factual support for this assignment of error, the appellant relies upon the following excerpts from post-trial affidavits:

The senior member stated that he considered the fact that the accused was a married man and that his wife was pregnant during the findings portion of deliberation. The senior member explained to me that his reasoning was as follows: If the accused were a good person he would have been at home with his pregnant wife, not "Tom-catting" around with another woman. The senior member stated that when his own wife was pregnant she wanted and needed him at home. The accused was a bad person because he was cheating on his pregnant wife, instead of being at home with her. Since he was a bad person, it

was more likely that he did in fact rape the victim.

Other members indicated that they also concurred with the senior member's reasoning on that point.

Affidavit of Lieutenant Michael G. McCartin, JAGC, USNR, Enclosure (2) to Clemency Petition dated 1 July 1994.

The senior member, a captain in the medical corps, stated that although the prosecution had not brought out this fact he knew from his own profession that someone sleeping or lying in a fetal position was indicative of post traumatic stress disorder and bolstered the alleged's victim [sic] credibility. He responded to a question regarding the incredible testimony of Janet Fagan, the expert on Rape Trauma Syndrome, wherein she stated that every person she counselled as a rape victim has, in fact, been raped by referring to apparent personal knowledge regarding a screening process that weeds out false complaints before arriving to Janet Fagan. It was my impression that the evidence did not support this but due to his profession he relied on this assumption and communicated this to the others during the course of deliberations.

Affidavit of Lieutenant Lisa C. Guffey, JAGC, USNR, Enclosure (1) to Supplemental Clemency Petition dated 14 July 1994.

We are not convinced that these assertions establish that the members of the appellant's court-martial engaged in misconduct in arriving at the findings. Furthermore, we are concerned about the manner in which the appellant obtained these purported facts.[2]

■ Since the findings are proper on their face, they may be impeached only when there is evidence that extraneous prejudicial information was brought to the attention of a

---

1. The appellant reasserts this claim in his second assignment of error. We will address it more fully in our discussion of that assignment of error.

2. We are aware that military justice sections, the Navy–Marine Corps Trial Judiciary, and the Judge Advocate General of the Navy may advocate use of post-trial surveys of members as a training tool for trial advocates. We are concerned that such inquiries, though well-meaning, may inadvertently improperly invade the deliberative process of the court-martial. Where such surveys are conducted, they should be carefully limited to objective matters which relate to trial advocacy. Inquiries into the members' subjective perceptions of the evidence risk creating appellate issues unnecessarily.

member, outside influence was improperly brought to bear upon any member, or unlawful command influence was brought to bear upon any member. R.C.M. 923. Evidence as to any other matters affecting the deliberative process of the members is incompetent to impeach the findings. *United States v. Brooks,* 42 M.J. 484 (1995); *United States v. Loving,* 41 M.J. 213 (1994), *affirmed* — U.S. ——, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996); Mil.R.Evid. 606(b).

Competent evidence for the purpose of impeaching a verdict must concern objective manifestations of improprieties, not alleged improprieties that are subjective in nature. MILITARY RULES OF EVIDENCE MANUAL, at 633. Alleged improprieties which are subjective in nature include unsound reasoning by a member, misconception of the evidence, and misapplication of the law. *See* R.C.M., Rule 923 discussion.

■ The appellant relies upon assertions which concern the deliberative process of the members. He inaccurately characterizes the senior member's knowledge based upon his experiences as "extraneous" information. The senior member's reference to his own experiences merely constituted unsound reasoning, at worst. The appellant has failed to establish that the senior member used his own experiences to introduce into the deliberative process matter which was not already in evidence. The appellant relies upon Lieutenant Guffey's "impression," along with her personal evaluation of the credibility of the evidence, to support the assertion that the senior member communicated his personal knowledge to the other members. Lieutenant McCartin's statement, that the other members indicated that they concurred with the senior member's reasoning, does not establish that the senior member communicated his reasoning, sound or unsound, to the other members during deliberations. It merely indicates that the other members, once they became aware of the senior member's reasoning, perceived it as being sound. This does not establish that extraneous information influenced the decision of the members.

The appellant has failed to show that objective grounds existed for impeaching the

verdict. Therefore, it was improper for anyone to question the members about such a ground. *See* R.C.M., Rule 923 discussion. The information improperly elicited from the members was incompetent as evidence of improprieties.

### III. THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT WAS GUILTY OF CHARGES II AND III (RAPE AND FORCIBLE SODOMY). (Citations omitted.)

■ Article 66(c), UCMJ, 10 U.S.C. § 866(c), requires this Court to determine not only the legal sufficiency of the evidence, but also its factual sufficiency. The test for legal sufficiency is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Turner,* 25 M.J. 324 (C.M.A.1987). Applying this test we must "draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. McGinty,* 38 M.J. 131, 132 (C.M.A.1993)(quoting *United States v. Blocker,* 32 M.J. 281, 284 (C.M.A.1991)). We are convinced that the evidence was legally sufficient to support the findings of guilty to Charges II and III at the appellant's court-martial.

■ The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are convinced of the accused's guilt beyond a reasonable doubt. *Turner,* 25 M.J. at 325. We have reviewed the record of trial *de novo* and are convinced beyond a reasonable doubt of the appellant's guilt, legally and factually.

### IV. APPELLANT'S SENTENCE TO FORTY–TWO MONTHS CONFINEMENT, FORFEITURE OF $400.00 PAY PER MONTH FOR FORTY–TWO MONTHS, AND A DISHONORABLE DISCHARGE WAS INAPPROPRIATELY SEVERE. (Citation omitted.)

■ We do not find any aspect of the appellant's sentence, nor the sentence as a whole, to be inappropriately severe.

Accordingly, the findings and the sentence, as approved on review below, are affirmed.

Senior Judge DeCICCO and Senior Judge McLAUGHLIN concur.