UNITED STATES, Appellee,

v.

Niguel R. OVANDO–MORAN, Boiler
Technician Fireman Recruit,
U.S. Navy, Appellant.

No. 97–0191.
Crim.App. No. 94–2075.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 17, 1997.

Decided Sept. 2, 1998.

For Appellant: *Major Michael R. Osborn,*
USMC (argued); *Major J.F. Havranek,*

USMC, and *Lieutenant John J. Luke*, JAGC, USNR.

For Appellee: *Lieutenant Russell J.E. Verby*, JAGC, USNR (argued); *Colonel Charles Wm. Dorman*, USMC, and *Commander D.H. Myers*, JAGC, USN (on brief); *Major Stephen Finn*, USMC.

*Opinion of the Court*

COX, Chief Judge:

Appellant was tried by a court-martial composed of members for unauthorized absence; rape; forcible sodomy; and housebreaking.[1] In accordance with his pleas, he was found guilty of the unauthorized absence offense. Contrary to his pleas, the court members convicted him of the remaining offenses, but reduced the housebreaking to unlawful entry.[2] He was sentenced to confinement for 42 months, forfeiture of $400 pay per month for 42 months, and a dishonorable discharge. The Court of Criminal Appeals affirmed the findings and sentence. 44 MJ 753 (1996).

This Court granted review of the following two issues:

I

WHETHER THE [UNITED STATES] NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS ERRED WHEN IT AFFIRMED THE MILITARY JUDGE'S DENIAL OF APPELLANT'S CHALLENGE FOR CAUSE AGAINST MEMBERS CAPTAIN [P] AND LIEUTENANT [M].

II

WHETHER THE [UNITED STATES] NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS ERRED AS A MATTER OF LAW WHEN IT FOUND THAT NO JUROR MISCONDUCT OCCURRED WHERE EXTRANEOUS PREJUDICIAL INFORMATION WAS BROUGHT TO THE ATTENTION OF THE MEMBERS AND WHERE THE MEMBERS FAILED TO FOLLOW THE INSTRUCTIONS OF THE MILITARY JUDGE.

We hold that there was no error and affirm the decision of the court below.

*FACTUAL BACKGROUND*

*ISSUE I*

After *voir dire*, appellant challenged two members for cause: Captain (CAPT) P and Lieutenant (LT) M. During *voir dire* of CAPT P, the court discovered that, as a doctor and medical corps officer, CAPT P had some personal experience seeing patients who exhibited symptoms of post-traumatic stress disorder. He obtained this experience while assigned to a Seal Team. CAPT P also stated that on occasion he had been called upon to give emergency medical care to sexual-assault victims. In response to several questions on this topic by defense counsel, CAPT P stated that he could assess the testimony from medical personnel without using his personal medical knowledge to influence the other members. Based on this information, defense counsel challenged CAPT P for cause

> [b]ecause he's a medical officer ... involved in [sic] a great deal of people with sexual assaults and people that have allegedly been sexually assaulted, and we feel, as a medical officer, it would make him [sic] difficult to be able to pull—to view this case impartially, especially in light of testimony of other medical officers. He might use his own training to—to maybe overrule that.

The military judge summarily denied this challenge for cause.

In response to concerns about LT M's affirmative answer during group *voir dire* that he would regard the accused's silence as a factor to consider in deliberations, LT M was questioned individually regarding whether he would draw adverse conclusions against the accused should he decide not to testify on his own behalf. The military judge asked what LT M's thinking was when he first affirmatively answered the question during group *voir dire*. LT M responded that he believed it would be "unnatural" for the ac-

1. These charges allege violations of Articles 86, 120, 125, and 130, *Uniform Code of Military Justice*, 10 USC §§ 886, 920, 925, and 930, respectively.

2. A violation of Article 134, UCMJ, 10 USC § 934.

cused not to testify on his own behalf. Specifically he stated:

My feeling was, sir, that although he does not have the requirement to testify or anything like that, to me it would be unnatural. If I were innocent of something I would not sit quietly by.

The military judge then clarified the answer by asking if, now that LT M understood that the accused was not required to testify, he would still "hold it against him." LT M agreed that he would not hold it against the accused. When the judge asked if there was any doubt about that, LT M answered that he would "still think it's unnatural," but he "would not say that that indicated guilt or innocence." The military judge then asked again if he would draw any inference at all from the accused's election to remain silent if he chose to do so. And, once again, LT M answered that he would not draw any inference from the accused's silence, but that he "still would think it would be unnatural." The defense counsel then asked if LT M would be "uncomfortable" if the accused did not take the stand. LT M answered that he would not be uncomfortable; however, in response to defense counsel's follow-up question, he again stated that he thought that it would be "unnatural" if the accused did not testify.

Defense counsel then challenged LT M for cause, stating:

[We challenge LT M], who stated that although he'd be able to—he understands Fireman Recruit Ovando's [sic] right to remain silent, that even though he still finds that unnatural and—and therefore we believe that in the interest of justice he would not be able to—if Fireman Recruit Ovando–Moran does not testify, view that in an impartial basis.

The military judge denied this challenge for cause without giving any amplifying explanation.

Defense counsel used his peremptory challenge against LT M and preserved this issue for review by stating that he would have used his peremptory challenge against CAPT

P had the challenge against LT M been granted. RCM 912(f)(4), Manual for Courts–Martial, United States (1995 ed.). We will review both denials for legal error.

ISSUE II

After the trial was completed, counsel from both the defense and government offices sought general impressions about the trial from the members, a practice which apparently some regard as a trial advocacy learning tool. See Ovando–Moran, 44 MJ at 756 n. 2 (noting, with reservations, the practice); but see RCM 1007(c).[3] Two enclosures to the clemency petition allege that the members may have considered improper matters during deliberations. These two exhibits are a letter from LT Lisa C. Guffey, JAGC, USNR, and an affidavit from LT Michael G. McCartin, JAGC, USNR. LT Guffey describes the post-trial conversation as a "discussion," while LT McCartin describes this conversation as an "interview." Each alleges that the members misconstrued or wrongly evaluated some of the evidence and did not completely follow the instructions given by the military judge.

Specifically, one statement alleges that CAPT P relied upon one of the expert's assumptions in arriving at his decision, although the interviewing attorney asserts that the expert testimony was "incredible." The statement then relates that the members were impacted by the military judge's comment that it was not government counsel who was badgering the accused when he testified, but rather that it was the accused who was being belligerent.

The affidavit states that the senior member improperly considered the testimony that the accused was married with a pregnant wife to conclude that the accused was a "bad person" who admitted to cheating on his wife, and was therefore more likely to have committed the rape. According to the affidavit, other members concurred with the senior member's views.

---

3. This rule states, "Except as provided in Mil. R.Evid. 606 [see text, infra at 304], members may not otherwise be questioned about their deliberations and voting."

DISCUSSION

ISSUE I

■ The standard of review for a judge's denial of a challenge for cause is whether the military judge abused his discretion. *United States v. Ingham*, 42 MJ 218, 227 (1995), citing *United States v. White*, 36 MJ 284 (CMA 1993).

In this case, defense counsel apparently relied upon RCM 912(f)(1)(N) to make his challenge for cause against CAPT P. The Discussion section of RCM 912(f)(1)(N) gives non-exclusive examples of situations creating "substantial doubt as to legality, fairness, and impartiality," such as a member who has a direct personal interest in the trial's result, a close relationship with the accused or counsel, or "an inelastic opinion concerning an appropriate sentence for the offenses charged." The list of examples is merely illustrative and is not exhaustive.

■ For a challenge for cause to be granted based upon the "perception of injustice," we look not to the status of a member in a profession, but to whether that member's presence on the court-martial affects the "perception or appearance of fairness of the military justice system." *United States v. Dale*, 42 MJ 384, 386 (1995); *see United States v. Berry*, 34 MJ 83 (CMA 1992). Moreover, the status of a member in a profession shared by one of the expert witnesses is not itself disqualifying. *United States v. Towers*, 24 MJ 143, 146 (CMA 1987). In order for a member's vocational or professional experience to be disqualifying, the member must demonstrate a bias or prejudice resulting from or inseparable from this experience. *Id.*

■ In this context, we first look at the challenge of CAPT P. The defense wanted to challenge him because of the danger that he would use his expertise in place of the testimony given by the expert witnesses. In answer to the questions posed, however, CAPT P gave no indication that any of his previous medical experience would somehow adversely impact or benefit either side. In fact, CAPT P testified that over the course of his 25 years as a doctor, he had treated a few

patients for alleged sexual assaults and he had seen some cases of post-traumatic stress disorder caused by traumatic experiences suffered by patients who had served in Vietnam. There was no indication that CAPT P's status as a medical doctor, or his limited experience in the subject matter of the expert testimony given at trial, rendered him unable to impartially listen to and evaluate the testimony. Thus, the military judge did not abuse his discretion in denying this challenge.

We thus turn to the military judge's denial of the challenge for cause against LT M.

■ We have a long line of cases addressing whether a member has exhibited an inelastic attitude toward sentencing or the awarding of a particular punishment such that it will not yield to the evidence presented and the judge's instructions. *See United States v. Giles*, 48 MJ 60 (1998); *United States v. McLaren*, 38 MJ 112, 118 (CMA 1993), *cert. denied*, 510 U.S. 1112, 114 S.Ct. 1056, 127 L.Ed.2d 377 (1994); *United States v. Bannwarth*, 36 MJ 265, 267 (CMA 1993); *United States v. Reynolds*, 23 MJ 292, 294 (CMA 1987); *United States v. Tippit*, 9 MJ 106 (CMA 1980). When the member's opinions are such that he or she cannot impartially evaluate the evidence, the challenge for cause must be granted.

We apply this same legal analysis to determine whether a member's attitude about the accused's exercise of his constitutional right to remain silent can be so inelastic that it will not yield to the military judge's instruction on this matter.

■ In this case, LT M stated his personal view that, if the accused did not testify, he would find this conduct "unnatural." LT M never swayed from that assessment and indicated that it was merely his personal opinion. In contrast, he unequivocally stated that he could follow the military judge's instructions and would not use the accused's silence as an indication of either guilt or innocence.

We have carefully evaluated LT M's candid responses. While LT M's feeling that the accused's silence would be "unnatural" might cause the defense to have concerns

about presenting a case-in-chief in which the accused elected not to testify, it clearly does not rise to *per se* disqualification. Even though a layperson at the outset of a trial may believe that it would be "unnatural" for a criminal defendant to not testify, it is possible for that person to serve as an impartial court member after proper *voir dire* and instructions by the military judge. LT M also said that he would not hold the accused's silence against him, that he would not view the accused's silence as an indication of guilt, and that he could follow all of the military judge's instructions. The military judge was in the best position to evaluate LT M's responses and determine whether he was capable of following the military judge's instructions. Under these circumstances, we hold that the military judge did not abuse his discretion in denying this challenge.

## ISSUE II

■ First, we must decide whether the hearsay statements of counsel are competent evidence. *See* Mil.R.Evid. 606, Manual, *supra; Tanner v. United States,* 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987); *United States v. Loving,* 41 MJ 213 (1994), *aff'd on other grounds,* 517 U.S. 748, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996).

There was no direct evidence of member misconduct. The sole source of information supporting the second issue in this case was a post-trial interview with the panel members, conducted by counsel who had observed portions of the trial. Ostensibly, post-trial interviews of individual members are only intended as a trial advocacy learning tool. *See* 44 MJ at 756 n. 2. Of course, any time that member interviews are conducted, the chance of discovering information about the deliberative processes increases, even though those conducting post-trial interviews are ex-

pressly prohibited from seeking this information. RCM 1007(c).

Mil.R.Evid. 606(b) states:

Upon an inquiry into the validity of the findings or sentence, a member may not testify as to any matter or statement occurring during the course of the deliberations of the members of the court-martial or, to the effect of anything upon the member's or any other member's mind or emotions as influencing the member to assent to or dissent from the findings or sentence or concerning the member's mental process in connection therewith[.]

Conversely, Mil.R.Evid. 606(b) also provides that "a member may testify on the question whether extraneous prejudicial information was improperly brought to the attention of the members of the court-martial, whether any outside influence was improperly brought to bear upon any member, or whether there was unlawful command influence."

The statements in question clearly fall within the first clause of Mil.R.Evid. 606(b) and do not raise any of the permissible issues within Mil.R.Evid. 606(b).[4] *See Loving, supra* at 235–39. The statement and affidavit submitted to the convening authority clearly invade the deliberative process and are proscribed by Mil.R.Evid. 606(b). *See also Tanner v. United States, supra.*

To the extent there is any justification for post-trial interviews, impeaching a verdict is not one of them. 44 MJ at 756 n. 2. We therefore decline to consider the information contained in the post-trial documents that were attached to appellant's clemency petition for any purpose.

---

**4.** The appropriate time to explore what effect the member's background may have on deliberations is during *voir dire,* not at a post-trial interview. Even if we had considered the post-trial statements prepared by counsel, there is no evidence that CAPT P communicated his specialized knowledge to the members in any way. One of the statements merely asserted that it was counsel's "impression" that he had done so. No

further information on this "impression" was presented to this Court. Moreover, we also point out that a member's specialized knowledge in a field is not the troublesome question; rather, it is the member's use of that knowledge to substitute as an expert in the deliberation room that gives us pause. There is nothing in this record to suggest that CAPT P unduly influenced any member or acted improperly.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

Judges SULLIVAN, CRAWFORD, GIERKE, and EFFRON concur.