# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

---

**UNITED STATES**

**v.**

**Captain KEITH A. WADE**
**United States Air Force**

**ACM 38332**

**09 June 2014**

Sentence adjudged 29 November 2012 by GCM convened at Nellis Air Force Base, Nevada. Military Judge: William C. Muldoon.

Approved Sentence: Dismissal; a fine of $21,378.14; to be confined until the fine is paid, but for not more than 4 months and 7 days; and a reprimand.

Appellate Counsel for the Appellant: William E. Cassara (civilian counsel) (argued) and Major Zaven T. Saroyan.

Appellate Counsel for the United States: Captain Thomas J. Alford (argued); Colonel Don M. Christensen; Major Daniel J. Breen; Major Roberto Ramirez; and Gerald R. Bruce, Esquire.

Before

MARKSTEINER, MITCHELL, and WEBER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

WEBER, Judge:

A panel of officer members at a general court-martial convicted the appellant, contrary to his pleas, of one specification of absence without leave and one specification of larceny, in violation of Articles 86 and 121, UCMJ, 10 U.S.C. §§ 886, 921. The members acquitted the appellant of two specifications of making a false official statement. The panel sentenced the appellant to a dismissal; a fine of $21,378.14; confinement until the fine is paid, but for not more than 4 months and 7 days; and a

reprimand. The convening authority disapproved the finding of guilty as to the absence without leave specification but approved the sentence as adjudged.

The appellant raises six issues for our consideration: (1) whether the military judge abused his discretion in denying the appellant's request for the production of a witness; (2) whether the military judge erred in his instructions to the members on a matter of which he took judicial notice; (3) whether the military judge erred by failing to provide an instruction to the members sua sponte during findings; (4) whether the members' general verdict of guilty as to the larceny charge and specification may stand when the verdict may have rested on impermissible grounds; (5) whether the military judge erred in denying a defense challenge to a court member; and (6) whether the evidence is legally and factually sufficient to support the larceny conviction. This Court granted oral argument on the second, third, and fourth issues.

We find no error materially prejudicial to a substantial right of the appellant, and apart from one matter involving the post-trial processing of this case, we affirm.

*Background*

The appellant was a member of the Utah Air National Guard who began his career as an officer in 2006 after serving as an Air National Guard enlisted member. The same year he began his commissioned service, the appellant and his wife purchased a home in North Las Vegas, Nevada, on Cactus Desert Court, where the appellant's wife thereafter resided continuously. As an officer, the appellant served in the Intelligence career field and found the demand for his skills and experience afforded him opportunities to serve on more than a part-time basis.

In November 2008, the appellant procured orders to travel from his listed home of record in Alpine, Utah, to Creech Air Force Base (AFB), Nevada (near the couple's home in North Las Vegas) to perform military duties. He obtained several extensions to these orders, which kept him on full-time military orders at Creech AFB through September 2010. Since his purported home of record on these orders was listed as Alpine, Utah, the appellant received per diem and other benefits for performing temporary duty (TDY) away from his commuting area. For the first several months of his tour at Creech AFB, the appellant did not claim reimbursement for lodging expenses, although many military members in TDY status would normally be entitled to such reimbursement. However, in July 2009, the appellant began claiming $98.33 per day in lodging expenses, an amount that increased slightly on 1 January 2010. To support his claims for reimbursement, the appellant submitted a series of invoices purporting to demonstrate he was renting a home in North Las Vegas, on Barhill Avenue, from "SBK Properties, LLC." The appellant later alleged that these invoices amounted to a "paperwork error," and that he was really trying to claim reimbursement for mortgage interest, an expense for which he believed he was entitled to be reimbursed. However,

the invoices plainly indicate that the appellant was claiming he incurred rental expenses for living at a Barhill Avenue address. They contain details such as his "check-in date," his payment status, check numbers for rental payments allegedly made to SBK Properties, a security deposit waiver, and number of tenants. The Government reimbursed the appellant more than $45,000 for his purported lodging expenses from 1 July 2009 through 30 September 2010.

The appellant again was on full-time military orders at Creech AFB from 29 December 2010 through 26 June 2011. As before, he listed his home of record for these orders as Alpine, Utah, and was reimbursed for expenses normally associated with temporary duty during these military orders. Again, he submitted invoices purporting to show that he was renting a home from SBK Properties, LLC, during a portion of his time on military orders. This time, however, the address of the rental home was listed as Cactus Desert Court, the same home the appellant and his wife had purchased in 2006. The appellant was reimbursed lodging expenses throughout this second tour at Creech AFB, totaling more than $16,000.

Although the appellant listed his home of record as Alpine, Utah, during these two periods of military service, he occasionally listed his home of record as North Las Vegas, Nevada, when he received military orders to perform duty at his Guard unit in Utah. This enabled him to collect additional benefits for travelling away from his home of record to perform military duty.

Military authorities eventually became suspicious of the appellant's travel claims. An investigation revealed that the appellant and his wife had co-founded "SBK Properties, LLC" shortly before they purchased the Barhill Avenue property. The purchase of the Barhill Avenue property and the formation of SBK Properties took place just days before the appellant began claiming reimbursement for his expense of purportedly renting the Barhill Avenue home. The investigation also revealed that the appellant never paid the corporation rent for the Barhill Avenue property, as he actually lived at the nearby Cactus Desert Court property with his wife.[1] Finally, the investigation revealed that the appellant, his wife, and the corporation leased the Barhill Avenue property to another tenant starting on 1 June 2010, during the time the appellant was being reimbursed for allegedly renting the home from the corporation.

Further facts relevant to each issue are laid out below.

---

[1] A defense exhibit introduced in sentencing proceedings and at the pre-trial investigation indicated the appellant had resided at the Cactus Desert Court with his wife more or less continuously since the couple purchased the home in 2006. However, in findings the Government elected not to introduce evidence of the appellant's residence leading up to the charged time frame.

*Defense Motion to Compel Production of a Witness*

Prior to trial, the defense asked the Government to produce several witnesses. One such witness was Lieutenant Colonel (Lt Col) KN, the commander of the appellant's Utah Air National Guard unit. The request for production averred that Lt Col KN "will testify as to the approval process for orders and leave process for [the appellant] while he was activated from the Utah Air National Guard which goes directly to the AWOL charged misconduct. This witness will also testify to [the appellant's] duty performance and honorable service." The Government denied the request for production, reasoning that another witness could testify to the unit's leave processes, and "the Government is willing to enter stipulation of expected testimony as it relates to [the appellant's] good duty performance for sentencing purposes." The defense then moved the military judge to compel production of several witnesses, including Lt Col KN. The defense motion did not specifically articulate a rationale why Lt Col KN's testimony was necessary. The Government opposed the defense's motion to compel.

The military judge denied the motion to compel the production of witnesses, including Lt Col KN. With regard to the unit's leave processes, the military judge found Lt Col KN's testimony was irrelevant, because he was not the unit's commander during the charged timeframe for the absence without leave charge and specification. The military judge also found, "While [Lt Col KN's] testimony may be relevant for sentencing, there has been no showing of why his testimony is necessary." The defense again took up this issue at trial, arguing primarily that Lt Col KN's testimony was relevant as to the absence without leave charge and specification. The defense also generally referred to its desire to "talk[] about duty performance and a good service member, which obviously [the appellant]'s got a right to bring that defense." The military judge again denied the defense's motion to compel production of Lt Col KN.

The convening authority's action to disapprove the appellant's conviction for absence without leave largely abrogates the issue of whether the Government should have produced Lt Col KN. Nevertheless, the appellant alleges the military judge erred in denying the motion to compel production of Lt Col KN because Lt Col KN could have testified to the appellant's good military character in findings, thereby making it more likely the factfinder would have found the appellant not guilty of the larceny charge and specification.

We review a military judge's ruling denying a motion to compel production of a witness for an abuse of discretion. *United States v. McElhaney*, 54 M.J. 120, 126 (C.A.A.F. 2000). An appellate court will not set aside a military judge's denial of such a motion unless it has a "definite and firm conviction" that the military judge committed "a clear error of judgment." *Id.* (citation omitted). Rule for Courts-Martial (R.C.M.) 703(b) provides: "Each party is entitled to the production of any witness whose testimony . . . on

the merits or on an interlocutory question would be relevant and necessary." In determining whether to compel personal production of a witness, the military judge should consider factors such as

> the issues involved in the case and the importance of the requested witness to those issues; whether the witness is desired on the merits or the sentencing portion of the case; whether the witness's testimony would be merely cumulative; and the availability of alternatives to the personal appearance of the witness, such as depositions, interrogatories, or previous testimony.

*McElhaney*, 54 M.J. at 127 (citing *United States v. Tangpuz*, 5 M.J. 426, 429 (C.M.A. 1978); *United States v. Ruth*, 46 M.J. 1, 4 (C.A.A.F. 1997)).

We find no abuse of discretion in the military judge's denial of the defense's motion to compel production of Lt Col KN. Trial defense counsel's motion to compel and its argument on the motion indicate the primary reason for seeking production of Lt Col KN was to have him testify as to the unit's leave policies. Trial defense counsel's argument on the motion only made a brief reference to a desire to "talk[] about duty performance and a good service member," and to "bring that defense." The defense never explicitly stated it wished to raise a good military character defense, and a fair reading of the entirety of the defense representations on this issue indicates the defense planned no such defense. Notably, in findings, the Government called the commander of the unit where the appellant performed duty at Creech AFB. If the appellant possessed good military character that the defense wished to place before the factfinder, the defense could have done so through the testimony of this commander, as the appellant performed military duties there for more than two years. However, trial defense counsel did not offer any evidence of the appellant's good military character in its case-in-chief. The Government had also indicated its willingness to enter into a stipulation of expected testimony as to Lt Col KN's assessment of the appellant's good duty performance. While this offer related to possible sentencing evidence, trial defense counsel offered no indication that the Government refused to similarly stipulate for findings purposes.

Even assuming error, we find no prejudice. The evidence of the appellant's guilt as to the larceny charge and specification was quite strong, and it is inconceivable that Lt Col KN's testimony about any good military character the appellant possessed would have successfully contradicted the abundant evidence of the appellant's guilt. The appellant is not entitled to relief on this issue.

*Instructions on Judicially-Noticed Matter*

At trial, the prosecution asked the military judge to take judicial notice of two segments of the Joint Federal Travel Regulation (JFTR): a section dealing with the

method of computing lodging allowances and a section that allowed a member to claim certain expenses such as monthly mortgage interest while in TDY status, provided certain conditions were met. The military judge agreed to take judicial notice of these two sections. The defense also asked the military judge to take judicial notice of certain definitions in the JFTR and to read the judicially-noticed provisions to the members before the defense rested. The military judge granted the defense request. The military judge's decision to take judicial notice of these provisions is not raised for our consideration.

When the military judge read the defense-requested judicially-noticed matter to the members before the defense rested, he concluded with the statement, "You may, but are not required to accept this conclusively, any matter I have judicially noticed." Similarly, in his findings instructions to the members, the military judge read the JFTR provisions requested by the prosecution and defense, and concluded with a statement that the members were not required to accept as conclusive any judicially-noticed matter. The appellant now alleges that the military judge erred in these concluding remarks to the members.

We accept the Government's concession at oral argument that the military judge erred in this respect. Mil. R. Evid. 201 deals with judicial notice of adjudicative facts. Subparagraph (g) of this rule states, "The military judge shall instruct the members that they may, but are not required to, accept as conclusive any matter judicially noticed." Mil. R. Evid. 201A, conversely, explicitly states that the procedural requirements of Mil. R. Evid. 201(g) do not apply to judicial notice of domestic law. In other words, when instructing members as to judicial notice of domestic law, the military judge is not to instruct the members that they may, but are not required to, accept as conclusive any such matter judicially noticed. *United States v. Williams*, 17 M.J. 207, 215 (C.M.A. 1984). Military regulations are considered "domestic law" for purposes of judicial notice. *United States v. Mead*, 16 M.J. 270, 273 (C.M.A. 1983).

Despite the military judge's error, we hold the appellant is not entitled to relief on this issue because no prejudice resulted. Normally, failure to object to an instruction or the omission of an instruction before the members close to deliberate constitutes waiver of the objection in the absence of plain error. R.C.M. 920(f). The Government therefore asserts that the appropriate standard of review for prejudice is plain error. The appellant counters by noting the correctness of a military judge's instruction is reviewed under a de novo standard. *United States v. Maynulet*, 68 M.J. 374, 376 (C.A.A.F. 2010). The appellant asserts that because the military judge improperly instructed the members, the issue of prejudice should be reviewed under a de novo standard.

Under any standard of review, no material prejudice to a substantial right of the appellant resulted. Article 59(a), UCMJ, 10 U.S.C. § 859(a). Despite the concluding sentences of the military judge's instructions, we see no reasonable possibility that the

members would have considered themselves free to disregard the provisions of the JFTR in determining whether the appellant stole money from the Government. The Government's case featured extensive testimony about the appellant's entitlement (or lack thereof) under the JFTR to claim certain expenses for which he was reimbursed. The comptroller for the appellant's Air National Guard unit testified that the JFTR controls a Guardsman's entitlements when on TDY. There is simply no reason to suspect the members might have ignored the provisions of the JFTR simply because the military judge instructed them that they had the ability to not accept the judicially-noticed matter as conclusive.

In addition, even if there was a risk the members would have ignored the provisions of the JFTR, the appellant would still stand rightly convicted of larceny. The appellant argues, "[W]hether [the appellant] actually stole from the government can only be determined by referencing and applying the regulation . . . ." This is not necessarily true. The evidence demonstrated the appellant claimed tens of thousands of dollars in rental costs for a house he did not rent and in which he did not live. The members were not required to refer to the JFTR to decipher the finer points of TDY entitlements in order to convict the appellant of larceny. Instead, they could have merely determined the appellant stole money from the Government by claiming expenses he never incurred. Regardless of what the JFTR states as to entitlements, claiming money for expenses not incurred constitutes larceny under these facts. The appellant stands properly convicted of larceny, and the military judge's error did not materially prejudice his substantial rights.

### *Military Judge's Failure to Sua Sponte Issue Instructions*

Trial counsel argued to the members that the appellant was guilty of larceny in part because he lived with his wife at the Cactus Desert Court home throughout his orders to Creech AFB, and therefore he could not claim any lodging expenses even if he had legitimately incurred them. He argued, "The JFTR says if you go TDY, you can't claim lodging expenses if you live with a family member or a relative," and therefore the appellant was "not allowed to collect anything because he lived with his wife, a family member."

Trial defense counsel did not object to trial counsel's argument or request that the military judge issue any curative instructions. On appeal, however, the appellant alleges that the military judge erred because trial counsel's argument misled the members as to entitlements to lodging expenses under the JFTR, and the military judge should have corrected any misunderstanding caused by trial counsel's argument. He asserts that the following JFTR provision, which was not provided to the members, governs his situation:

U4139   COST FOR LODGINGS JOINTLY OCCUPIED BY MEMBER
AND DEPENDENTS

The cost for lodgings jointly occupied by a member and dependents is 50% for the member and 50% for the dependents (regardless of the number of family members) when a member in a per diem status receives TLA for dependents (par. U9160-C).  When dependents are not traveling at GOV'T expense, the member is authorized the single room rate.

Joint Federal Travel Regulation (JFTR), Vol. 1, Uniformed Service Members, ¶ U4139 (1 January 2010).[2]

Again, the parties differ as to the appropriate standard of review.  The Government asserts the appropriate standard of review on this issue is plain error because the defense did not ask the military judge to instruct the members on this JFTR provision, citing the plain language of R.C.M. 920(f).  The appellant asserts the de novo standard is appropriate, reasoning that the military judge's failure to instruct the members on the JFTR provision noted above rendered the remaining instructions misleading and therefore incorrect.

We find the appellant's position on the appropriate standard of review highly dubious, because it would essentially relieve trial defense counsel of any responsibility to bring relevant regulations to the military judge's attention.  The appellant's position would require a military judge to be familiar with every section of every regulation in existence and sua sponte instruct on relevant provisions.  Nonetheless, the appellant's contention as to the appropriate standard of review is not germane to our analysis, because the appellant's assertion is meritless under any standard of review.  First, we reject the appellant's interpretation of the JFTR that he was entitled to some form of lodging reimbursement when he was in fact residing with his wife.  The provision the appellant cites only indicates that if a member is properly TDY and chooses to bring his or her spouse along on the TDY when the spouse is not traveling at Government expense, the member cannot claim additional lodging costs incurred by the spouse's presence.  A JFTR provision more relevant to the appellant's situation states as follows:

---

[2] The appellant quoted the 2010 version of the Joint Federal Travel Regulations (JFTR) in his brief.  We note that both the 2009 and 2010 versions of the JFTR cover the charged timeframe.  There is no substantive difference from 2009 to 2010 in paragraphs cited in this opinion.  *See* Joint Federal Travel Regulation (JFTR), Vol. 1, Uniformed Service Members, (1 January 2009); Joint Federal Travel Regulation (JFTR), Vol. 1, Uniformed Service Members, (1 January 2010).

U4129 LODGING UNDER THE 'LODGING-PLUS' COMPUTATION METHOD

*Lodging cost reimbursement is not authorized for a member who stays with a friend or relative.* A member, who lodges with friends or relatives, is authorized the TDY location [meals and incidental expenses] rate, if otherwise eligible. . . .

**Example 1**: A member (outpatient) and a DOD civilian employee (attendant), each traveling under an official TDY travel authorization/order to Location A, reside together with family members who live at/near Location A during the TDY. They commute daily to the TDY location. The member is not authorized lodging reimbursement, but the DOD civilian employee possibly may be eligible for reimbursement of some lodging costs.

Joint Federal Travel Regulation (JFTR), Vol. 1, Uniformed Service Members, ¶ U4129(E) (1 January 2009).

The appellant's reading of the JFTR is strained and was not sufficiently credible to warrant a requirement for the military judge to instruct upon it. In addition, it is also largely irrelevant to the facts of this case. As outlined above, the appellant never even incurred the purported rental expenses he claimed, which were claims that formed at least part of the basis for his conviction. Under these facts, it is no wonder why trial defense counsel did not object to trial counsel's argument or request a curative instruction from the military judge. The facts of this case do not fit the appellant's theory of entitlement, and the evidence raised no possibility of the members being misled as to the appellant's entitlement to reimbursement for any temporary duty he performed. Therefore, there was no duty for the military judge to issue a curative instruction.

*Members' General Verdict*

The appellant next alleges that the members' general verdict of guilty on the larceny charge and specification may not stand. Citing cases such as *Stromberg v. California*, 283 U.S. 359 (1931), *Street v. New York*, 394 U.S. 576 (1969), *Zant v. Stephens*, 462 U.S. 862 (1983), and *United States v. Barberi*, 71 M.J. 127 (C.A.A.F. 2012), he asserts there is a reasonable possibility that the members may have convicted him based on an erroneous legal theory. As such, he may have been convicted for having engaged in legal conduct, and such a conviction violates his due process right to engage in conduct not declared illegal.

The appellant's argument is creative, but wholly unpersuasive. We see no possibility that the members' general verdict was issued based on an erroneous view that

the appellant committed larceny when in fact his conduct was legal. The appellant's argument that his conviction could have been based on legal conduct is based exclusively on his interpretation of paragraph U4139 of the JFTR, an interpretation we have already soundly rejected. We acknowledge that the record does not make it clear exactly what conduct by the appellant the members found larcenous. Likely, the members found that the appellant committed larceny simply by claiming tens of thousands of dollars in rent for a house he never lived in and for which he never paid rent. The appellant's conviction may also have been based solely on the fact that he claimed he rented the Barhill Avenue house as a tenant for several months after his corporation actually leased it to another person. It is also possible the members found the appellant stole money from the Government because he was never actually away from home, as his claimed home of record in Utah appeared doubtful. It may also be that the members convicted the appellant of larceny because he resided with his wife, never notified the Government of such when making his claims, and under paragraph U4129 was clearly not entitled to reimbursement for lodging expenses. The appellant's actions supplied multiple bases on which the members might have convicted him for larceny, and the general verdict construct in the military justice system does not require this Court to know what basis or bases the members found warranted the conviction. This assignment of error is without merit.

*Denial of Challenge for Cause*

The appellant next alleges the military judge erred by denying the defense challenge for cause concerning Colonel (Col) HR.[3] The appellant contends Col HR should have been excused under the implied bias standard. We disagree.

Implied bias is "viewed through the eyes of the public, focusing on the appearance of fairness." *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010) (citations and internal quotation marks omitted). Therefore, appellate courts employ an objective standard when reviewing a military judge's decision regarding implied bias. *United States v. Strand*, 59 M.J. 455, 458 (C.A.A.F. 2004). We review issues of implied bias under a standard less deferential than abuse of discretion, but more deferential than de novo. *Id.* (citing *United States v. Miles*, 58 M.J. 192, 195 (C.A.A.F. 2003)). In reviewing challenges for cause under the implied bias standard, military judges are required to follow the "liberal grant" mandate, which "supports the UCMJ's interest in ensuring that members of the military have their guilt or innocence determined 'by a jury

---

[3] The appellant's assignment of errors also initially alleged that the military judge erred in denying a challenge for cause against Lieutenant Colonel (Lt Col) EC, on the basis that he was a military magistrate who relied on advice from the base legal office's military justice division. However, the Government's brief noted that trial defense counsel failed to preserve his objection to Lt Col EC's service on the panel when he peremptorily challenged Lt Col EC after the military judge denied the challenge for cause. *See* Rule for Courts-Martial (R.C.M.) 912(f)(4). The appellant's reply brief acknowledges that this Court is precluded from further review of the challenge against Lt Col EC.

composed of individuals with a fair and open mind.'" *United States v. James*, 61 M.J. 132, 139 (C.A.A.F. 2005) (quoting *United States v. Smart*, 21 M.J. 15, 18 (C.M.A. 1985)). "[I]n the absence of actual bias, where a military judge considers a challenge based upon implied bias, recognizes his duty to liberally grant defense challenges, and places his reasoning on the record, instances in which the military judge's exercise of discretion will be reversed will indeed be rare." *United States v. Clay*, 64 M.J. 274, 277 (C.A.A.F. 2007).

Col HR disclosed in voir dire that, as an Air Force psychologist, he had served as an expert consultant to the Government in three cases. One of these cases involved the same trial counsel as in the instant case and occurred within the six months preceding trial in the instant matter. None of the cases in which Col HR served as a consultant involved charges similar to those in the instant case, and Col HR never testified in any of those cases.

Trial defense counsel challenged Col HR under the implied bias standard. The military judge denied the defense's challenge for cause against Col HR, stating as follows:

> I don't find there's any actual bias with [Col HR] and none is being alleged by defense counsel. I took this as an implied bias challenge, particularly with the setting of the liberal grant mandate. The standard is a reasonable person knowing all the facts would believe that there is a substantial doubt about the legality, fairness, and impartiality of a court-martial because of a member's presence on the court panel. This is not someone sitting in the accused's shoes[;] it's a reasonable person knowing all the facts. Given the limited amount of interaction that [Col HR] had, albeit with this particular trial counsel, but even answering the questions, he was the advisor to the trial counsel, not the other way around. He indicated that he wouldn't be swayed by the fact that she is part of the prosecution team. He's never testified. He spent about an hour with this particular prosecutor. So I think that a reasonable person knowing all of that would not believe there is a substantial doubt about the legality, fairness and impartiality because [Col HR] were to sit on this panel. And I say that even with the liberal grant mandate in mind.

The military judge considered the challenge based upon implied bias, recognized his duty to liberally grant defense challenges, and placed his reasoning on the record. We find this is not one of the "rare instances" in which the military judge's exercise of discretion will be reversed. It is not uncommon for members of a court-martial panel to work with members of a base legal office on other matters, including military justice issues. The fact that Col HR advised trial counsel about a different matter for an hour or less sometime in the preceding six months is not remarkable or concerning. Col HR

advised trial counsel, not the other way around. There is therefore no concern—in actuality or perception—that trial counsel held some authority over Col HR by virtue of their previous interaction, particularly given the disparity in rank between Col HR and trial counsel. There is simply no reason to believe a reasonable member of the public would have any concern about the fairness of this court-martial based on Col HR's service on the panel. No implied bias existed in Col HR's service on this case.

*Factual and Legal Sufficiency*

The appellant contends the evidence is factually and legally insufficient to sustain his convictions for these offenses. To support this contention, he cites his testimony from the court-martial indicating a lack of intent to steal from the Government. He also asserts that the Air National Guard unit comptroller testified that the appellant was entitled to reimbursement for certain expenses while TDY, and the amount he was reimbursed did not exceed the amount of his entitlements. We disagree.

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (citation and internal quotation marks omitted). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

"The test for legal sufficiency of the evidence is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (citation and internal quotation marks omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). Our assessment of legal sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

We have no difficulty concluding the appellant's larceny conviction is factually and legally sufficient. As a preliminary matter, the Government introduced evidence indicating the appellant may have altered his home of record in order to claim TDY expenses when he was not entitled to such reimbursement. We doubt that the appellant was ever truly TDY during his tours of duty at Creech AFB, and therefore may have received expenses such as per diem and mileage when he knew he was not entitled to such reimbursement. However, we need not definitively rule on this point, just as the

court members did not need to reach this issue. Even assuming that appellant was in a proper TDY status during his tours of duty at Creech AFB when he had a home established in nearby North Las Vegas, the appellant was never entitled to reimbursement for any rent, mortgage interest, or similar expenses he actually incurred.

The testimony of the comptroller and provisions of the JFTR submitted by the Government demonstrate that lodging cost reimbursement is not authorized for a member who stays with a friend or relative. Therefore, even if the appellant's true home of record was Utah instead of Nevada, he could not be reimbursed any rent his wife or their corporation would have charged him for living in the Cactus Desert Court property. Likewise, the appellant could not claim mortgage interest on the Cactus Desert Court home, because he and his wife purchased the home well before the appellant's orders to Creech AFB commenced.[4] As to the Barhill Avenue property, the appellant never paid any rent to the corporation he and his wife co-owned. He also could not claim mortgage interest on the Barhill Avenue home, because he already owned a home in North Las Vegas. All of these points are firmly established in the record of trial and supported by common sense. In short, it is evident the appellant was not entitled to the money he claimed and for which he was reimbursed.

The appellant's contention that he was simply confused as to his entitlements or the proper paperwork to submit to claim his entitlements is unpersuasive. The appellant's own actions demonstrate his improper claims were not the result of a mistake or innocent confusion. Rather, the appellant's actions evidence a calculated intent to bilk the Government out of money by deceiving pay officials. The appellant testified he learned in mid-2010 that military members in TDY status may claim mortgage interest and similar expenses for homes they purchase during temporary duty. While he should have known this rule did not apply to him (since he already owned a home with his wife), he could have fully explained his situation to a finance official and made a truthful claim for expenses he thought he was entitled to, thereby avoiding a larceny conviction. This is not what the appellant did. Instead, he specifically created a false invoice claiming that he rented the Barhill Avenue property when he knew he did no such thing. His false invoices detailed information such as his "check-in date," check number, payments made, security deposit information, and number of guests, all of which were false. The appellant continued to claim expenses for renting the Barhill Avenue home after renting the home out to another person. The appellant created a detailed web of lies to claim reimbursement for "expenses" he did not incur and to which he knew he was not entitled. The appellant's unconvincing testimony at trial also does nothing to aid his contention on this issue. The appellant's larceny conviction is legally and factually sufficient.

---

[4] During the charged time frame, the JFTR allowed for reimbursement of mortgage interest if a service member purchased and used that home for TDY lodging. *See* JFTR, Vol. 1, ¶ U4137 (1 January 2009).

*Convening Authority's Action*

Though not raised by the parties, we note an anomaly in the convening authority's action. In regard to the court-martial's guilty findings and the adjudged sentence, the convening authority's action reads as follows:

In the case of CAPTAIN KEITH A. WADE, . . . the finding of guilty of Specification, [sic] Charge I is disapproved. The Specification, Charge I is dismissed. The sentence is approved and, except for the dismissal will be executed. The Air Force Corrections System is designated for the purpose of confinement, and the confinement will be served therein or elsewhere as directed by Headquarters Air Force Security Forces Center, Corrections Division.

The convening authority's action disapproves the Specification of Charge I, but fails to disapprove the Charge itself. We remedy this error in our decretal paragraph below by setting aside and dismissing Charge I.[5]

*Conclusion*

The finding of guilty as to Charge I is set aside, and Charge I is dismissed. The remaining approved findings and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings, as modified, and the sentence are

AFFIRMED.



FOR THE COURT

STEVEN LUCAS
Clerk of the Court

---

[5] The action does not specifically dispose of the larceny charge and specification, but this is not required. The convening authority is not required to explicitly take action on the findings. Article 60(c)(3), UCMJ, 10 U.S.C. § 860(c)(3); R.C.M. 1107(c)(1). Where a convening authority does not address certain findings of the court-martial in the action, the convening authority impliedly acts in reliance on the recommendations of the staff judge advocate and thus impliedly approves findings as reported by the staff judge advocate, absent evidence to the contrary. *United States v. Diaz*, 40 M.J. 335, 337 (C.M.A. 1994). The staff judge advocate properly advised the convening authority of the court-martial's finding with regard to the larceny charge and specification, and there is no material evidence indicating the convening authority did not intend to approve that finding. In fact, his action in explicitly disapproving and dismissing the absence without leave specification, but leaving the larceny conviction untouched, indicates his desire to follow his staff judge advocate's recommendation on this charge and specification.